COMMONWEALTH *vs.* DAVID CROWLEY & another.

Suffolk.  November 23, 1896. — January 12, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Indictment — Evidence — Verdict — Trial — Criminal Pleading — " Assault with intent to commit Larceny " — Sentence.*

An indictment under Pub. Sts. c. 202, § 26, alleged that the defendant, at a time and place named, " with force and arms, with intent to commit larceny, in and upon one A. an assault did make, and him the said A. in a certain building, to wit, the shop of one B. there situate, feloniously and unlawfully did then and there confine, beat, bruise, wound, and put in fear, for the purpose then and there of feloniously stealing, taking, and carrying away from said building the moneys, goods, and chattels in said building then and there being." *Held,* that the indictment contained a valid charge of assault and battery, and that it was not necessary that it should aver the ownership of the goods intended to be stolen.

At the trial of an indictment against C., under Pub. Sts. c. 202, § 26, charging an assault upon A., if A. has testified that the defendant struck him, there is no valid objection to the questions, " How do you know it was C. that struck you ? " and " What was C. doing when you turned around ? "

Evidence as to the property said to have been stolen is competent upon the trial of an indictment, under Pub. Sts. c. 202, § 26, alleging an assault with intent to commit larceny.

An indictment under Pub. Sts. c. 202, § 26, in one count alleged that the defendant, at a time and place named, " with force and arms, with intent to commit larceny, in and upon one A. an assault did make, and him the said A. in a certain building, to wit, the shop of one B. there situate, feloniously and unlawfully did then and there confine, beat, bruise, wound, and put in fear, for the purpose then and there of feloniously stealing, taking, and carrying away from said building the moneys, goods, and chattels in said building then and there being." At the trial, the judge instructed the jury that, under the indictment, it was possible for them to return one of either four classes of verdicts : 1. Of the full offence. 2. Of an assault with intent to commit larceny. 3. Of assault and battery. 4. Of not guilty. The jury agreed after the adjournment of the court for the day, and, as instructed by the judge, sealed up their verdict before separating. The verdict orally announced in court was as follows : " Guilty of assault, with intent to commit larceny." The written verdict returned into court was as follows : " First count, Not guilty. Second count, Guilty. Third count, Guilty." In response to a question by the judge, whether by the word " count " they meant " offence," as indicated in his charge, the jury replied that they did; that by " first count " they meant the full offence; that by " second count " they meant assault with intent to commit larceny; and that by " third count " they meant assault and battery. *Held,* that the verdict was properly received and recorded.

If the defendant was acquitted of the full offence with which he was charged under Pub. Sts. c. 202, § 26, no question as to the sufficiency of the evidence to

support the charge of that offence is open upon exceptions, after conviction of a lesser offence.

*It seems*, that the offence of assault and battery with intent to commit larceny, without more, is not punishable as a distinct offence under any statute of this Commonwealth, or at common law.

If a statute specifies "force and violence" as an ingredient of an offence, the charge of the offence should include those words, and an averment that it was committed "with force and arms" is not an equivalent.

A charge of an attempt to commit an offence must be set forth in direct terms.

A defendant indicted under Pub. Sts. c. 202, § 26, may be sentenced for assault and battery, although acquitted of the full offence charged in the indictment, and convicted of "an assault with intent to commit larceny."

INDICTMENT, under Pub. Sts. c. 202, § 26, against William Casey, David Crowley, and William Green, alleging that they, on August 12, 1896, at Boston, "with force and arms, with intent to commit larceny, in and upon one Charles Lord, an assault did make, and him the said Lord in a certain building, to wit, the shop of one Virgilius H. Grover there situate, feloniously and unlawfully did then and there confine, beat, bruise, wound, and put in fear, for the purpose then and there of feloniously stealing, taking, and carrying away from said building the moneys, goods, and chattels in said building then and there being."

In the Superior Court, before the jury were empanelled, the defendants moved to quash the indictment, for the following reasons, among others:

"1. The indictment is fatally defective for the reason that it does not accurately follow the language of the statute.

"2. The indictment charges a confining of Lord in the shop of Grover, but it does not allege with certainty whether the confining was for the purpose or intent of stealing the moneys, goods, and chattels of Lord in said building, or whether Lord was confined for the purpose or intent of stealing the money, goods, and chattels of Grover in said building.

"3. The indictment charges only the crime of 'assault with intent to commit larceny,' and there is no crime of 'confining with intent to commit larceny' set out in the indictment, within the meaning of Pub. Sts. c. 202, § 26.

"4. The indictment is defective because it does not allege a succeeding or failing in the different acts set forth in the indictment, which is imperative according to the wording of the statute, as the crime is an attempted one.

"5. The indictment conflicts with Article 12, Declaration of Rights, in that it contains several offences and integral parts of different offences, and makes it possible for a man to be indicted on evidence of one crime and convicted on the evidence of another crime.

"6. The indictment is bad for duplicity, in conjunctively describing and alleging several offences in each count, when the statute makes them disjunctive."

*Gaskill,* J., overruled the motion ; and the defendants excepted.

At the trial, Charles Lord testified that on August 12, 1896, about 3.45 o'clock, A. M., three persons, whom he satisfactorily identified as the defendants, entered the shop of Virgilius H. Grover, for whom he was working at the time in the capacity of a night waiter in a restaurant on Green Street, in Boston ; that his duties involved the waiting upon customers and the charge of the cash register, together with the control of the restaurant while he was acting as such waiter ; that the defendants drove up to the door in front of the restaurant in a buggy, alighted and entered, and took seats on stools which were in front of a counter, and ordered breakfast ; that the store was about six feet wide and twenty feet long to a wooden partition, beyond which nothing could be seen from the restaurant ; that the counter was about twenty feet long, and the defendant Green sat about midway, the defendant Crowley sat next to him, nearest the door, and the defendant Casey sat next to Crowley, close to the door, which was open, and remained so during the entire period that the defendants were in the restaurant, which was about fifteen minutes ; that one of the defendants had money, and the total amount of the bill for all three defendants was forty cents ; that Green arose from his seat and advanced towards the witness, who was behind the counter, directly opposite the cash register, and laid on the counter ten cents, which the witness picked up and turned squarely around with his back towards Green, for the purpose of depositing it in the drawer of the cash register ; that while he was in this position Green reached over the counter, which was about one and one half feet wide, and put his hand into the drawer of the cash register, which had been opened by the witness, and grabbed some bills and silver ; that the witness

caught hold of Green's wrist and held him around the neck; and that, while he was depositing the ten cents which was given him by Green, the defendant Crowley struck him on the right side of the head.

In order to prove that it was Crowley who struck Lord, the government was permitted to ask the following question : " How do you know it was Crowley that struck you ? " The defendant objected to the question, on the ground that it introduced the name of the accused, but the judge overruled the objection, and the witness answered, " I turned around and grappled with Green, and saw him." The government was also permitted to ask the witness, " What was Crowley doing when you turned around ? " The defendant objected to the question, assigning therefor the previous reason, but the judge overruled the objection, and the witness answered, " He ran for the door." The defendant excepted to the admission of both questions and answers.

The witness further testified that the trouble lasted from fifteen to twenty seconds, during which time cups were thrown ; that Crowley lagged behind, while the other defendants hurriedly left the restaurant and entered the buggy, which was still standing outside, whipped up the horse and drove away ; that Crowley ran after the buggy for about four blocks, and finally succeeded in getting into it with the others ; that the witness left the store for a short period, and chased the buggy for about four blocks, and immediately returned to the restaurant; that during that time he left no one in charge of the restaurant, and he was uncertain as to whether he had to open the drawer of the cash register upon his return, or whether it was closed; that he missed about eighteen dollars, which amount he thought was in the drawer of the cash register; that he detected the smell of intoxicating liquor about Crowley, but did not particularly notice the other defendants; that while the three defendants were eating, there was a dispute among them as to which one was to pay for the total amount due; and that, when Green gave him the ten cents, there was nothing said about his paying for all, or that the amount of his individual bill was fifteen cents instead of ten cents.

The government also offered the evidence of Grover, who tes-

tified that Lord was in his employ on August 12, 1896; that the witness was in his store on the evening of August 11, but was not present at the time when the alleged offence took place; and that he could not tell what amount was in the cash register on August 12, which was Wednesday, as he counted the money on every Monday morning; and then compared the total with the indicator of the cash register, which would tell the amount of deposits during the week.

Charles E. Kelley, a police officer, testified for the government that on August 12, 1896, about four o'clock A. M., he saw a buggy and a man running behind pass through Green Street; that he met Lord soon after, and about fifteen minutes later met the defendants driving through Cambridge Street; that he and another officer stopped the defendants, and he got into the buggy and drove it to the station-house on Joy Street; that the defendant Crowley attempted to escape by jumping from the buggy, but he caught hold of him and held him until they reached the station-house; that while the officer was driving to the station-house Casey suggested that they return to the restaurant and he would pay for the meals; that on the person of Casey was found $29.40 in money of various denominations, and nothing was found on either Crowley or Green; and that they were all under the influence of liquor, but in the judgment of the witness not sufficiently drunk to charge them with drunkenness.

The defendant Green testified that he was with the other defendants on the morning in question, and in the restaurant of Grover on Green Street; that while sitting in the restaurant Crowley said that he could not pay for the meals, as he had no money; that the witness was sitting on a stool when he offered Lord ten cents, and that he did not see a cash register; that Lord stood facing the witness and immediately caught hold of him by the collar, saying that he would hold him for the police; that the witness tried to get away from Lord and in so doing pulled him down on to the counter; that Lord struck the witness, who then struck Lord on the cheek and released himself, and immediately left the restaurant, got into the buggy, and drove away; that Lord did not at any time fall behind the counter, but kept shouting " Police ! " before and after he struck the witness : that Crowley was about a foot and a half away

from the witness nearest the door, and while the trouble was going on between Lord and himself he heard the rattling of some dishes after Lord had struck him; that Crowley did not strike Lord, and, if cups were thrown, he did not see who threw them; that Crowley did not succeed in getting into the buggy, but ran behind and was taken in after they had gone a distance of about four blocks; and that they met officer Kelley shortly afterwards on Cambridge Street and were driven to the station-house.

The defendant Crowley asked the judge to rule "that the only offence charged in the indictment is that of 'assault with intent to commit larceny'; and that all evidence of stolen property said to have been stolen should be disregarded, as no larceny is charged in the indictment."

The judge refused so to rule, but ruled that one of the offences charged was assault with intent to commit larceny; and the defendant Crowley excepted.

The judge also instructed the jury that "under this indictment it is possible for a jury to return one of either four classes of verdicts: 1. A verdict of the full offence. 2. A verdict of an assault with intent to commit larceny. 3. A verdict of assault and battery. 4. A verdict of not guilty." To this instruction as to a verdict of the full offence, the defendant Crowley excepted.

The jury, having agreed after the adjournment of the court for the day, by direction of the judge, separated and returned the next morning a sealed verdict.

Upon inquiry by the clerk as to whether the jury had agreed upon their verdict, the foreman answered, "We have," and delivered the sealed verdict to the clerk; and, in response to the question as to what was their verdict as to the defendant Casey, the foreman answered, "Not guilty." In response to the question as to what was their verdict as to the defendants Crowley and Green, the foreman said, as to each defendant, "Guilty of assault with intent to commit larceny."

The written verdict as to Crowley and Green was as follows: "First count, Not guilty. Second count, Guilty. Third count, Guilty."

The jury, with the consent of counsel for Crowley, was then

asked by the judge whether, in the written verdict as to Crow-
ley and Green, where they used the word " count " they meant
" offence " as indicated in the charge of the judge, to which they
replied that they did; that by " first count " they meant the full
offence charged in the indictment; that by " second count " they
meant the second offence charged, namely, assault with intent to
commit larceny; and that by the " third count " they meant the
third offence charged, namely, assault and battery ; to which no
objection was made by the defendants.

The defendants alleged exceptions, and also moved that the
judgment be arrested, for the following reasons, among others:

" 1. That the indictment against Crowley and Green con-
tained but one single and distinct count, and was the only offence
with which they were charged.

" 2. That the indictment contained but one count for the
one offence, and that a verdict of ' Not guilty ' upon the first count
is equivalent to an acquittal of the offence charged."

The motion was overruled ; and the defendants appealed.

The defendants Crowley and Green were accordingly sen-
tenced " for their offence of an assault with intent to commit
larceny "; and they filed a motion to stay the execution of the
sentences.

Thereupon the judge filed a certificate, that in his opinion
there was reasonable doubt whether the sentences should stand,
and ordered that the execution of the same be stayed until the
further order of the court; and the indictment was ordered to
be continued to await the determination of this court.

*F. F. Sullivan,* (*J. M. Sullivan* with him,) for the defendants.

*J. D. McLaughlin,* Second Assistant District Attorney, for the
Commonwealth.

ALLEN, J.   1. The motion to quash was rightly overruled.
The indictment contains a valid charge of assault and battery.
As an indictment under Pub. Sts. c. 202, § 26, it need not aver
the ownership of the goods intended to be stolen; see *Common-
wealth* v. *Moore,* 130 Mass. 45 ; and in other respects an indict-
ment substantially similar, though open to criticism, was held
sufficient, in *Commonwealth* v. *Holmes,* 165 Mass. 457.

2. The witness Lord, having testified that the defendant Crow-
ley struck him, there was no valid objection to the questions,

" How do you know it was Crowley that struck you ? " and " What was Crowley doing when you turned around ? " This objection appears to have been founded upon the language of the court in *Commonwealth* v. *Phillips*, 162 Mass. 504; but in that case the witness had not named the defendant.

3. The evidence as to the property said to have been stolen was competent, upon the charge of the offence under Pub. Sts. c. 202, § 26.

4. The verdict of the jury was properly received and recorded. The purpose of directing the jury to put in writing the result which they had agreed upon was to enable the court to see that their verdict as orally announced conformed to what they had agreed upon before their separation. In their writing the jury did not use the word " count " in its technical sense. Since the indictment contained but one count, it is obvious that they used it as meaning " offence," and that, having reference to the instructions which had been given, they meant to express that the defendants Crowley and Green were guilty of an assault with intent to commit larceny, and guilty of assault and battery. *Commonwealth* v. *Walsh*, 132 Mass. 8.

5. The defendants were acquitted of the full offence with which they were charged under Pub. Sts. c. 202, § 26 ; and no question as to the sufficiency of the evidence to support the charge of that offence is now open.

6. The defendants requested the court to rule that the only offence charged in the indictment was assault with intent to commit larceny, and therefore they have no ground of complaint because the court allowed the jury to return a verdict of guilty of an offence so described, and no exception on this ground was taken. It appears by the record that the defendants were sentenced " for their offence of an assault with intent to commit larceny "; but execution of the sentences was stayed because the court had some doubt whether the sentences should stand. The defendants do not take the point that there is no such offence as assault and battery, with intent to commit larceny ; but we know of none. It is not an offence under Pub. Sts. c. 202, § 26, to commit an assault and battery with intent to commit larceny, without more. That is, it must also be done " for the purpose of stealing from a building, bank, safe, vault, or other depository of

COMMONWEALTH *v.* CROWLEY. [167

money." So far as we are aware, the offence of assault and battery with intent to commit larceny, without more, is not punishable as a distinct offence under any statute of this Commonwealth, or at common law. The words " with intent to commit larceny " are merely matter of aggravation of the assault and battery, not in the sense of making a distinct offence, but only as influencing the discretion of the court in fixing the sentence. *Commonwealth* v. *Fischblatt,* 4 Met. 354, 356. *Commonwealth* v. *Kennedy,* 131 Mass. 584. 2 Bish. Crim. Law, § 42.

The statute which comes nearest to creating an offence of assault with intent to commit larceny is Pub. Sts. c. 202, § 25 ; but in that a different offence is described, namely, an assault " with force and violence, and with intent to rob or steal." This means actual violence, as distinguished from merely constructive force and arms, and it would seem that the intent must be to steal from the person. Since the statute specifies " force and violence " as an ingredient of the offence, the charge of the offence should include those words, and an averment that it was committed " with force and arms " is not an equivalent. See *Commonwealth* v. *Humphries,* 7 Mass. 242 ; *Commonwealth* v. *Clifford,* 8 Cush. 215, 218 ; *Commonwealth* v. *Shattuck,* 4 Cush. 141 ; 2 Bish. Crim. Proc. §§ 371–380, 390 ; 2 Bish. Crim. Law, §§ 507, 1167. It is not intimated on the part of the government that this indictment would be good as a charge under § 25.

Nor can the indictment be supported as a charge of an attempt to commit the graver offence, under Pub. Sts. c. 210, § 8. A charge of an attempt must be set forth in direct terms. *Commonwealth* v. *Roosnell,* 143 Mass. 32, 37, and cases there cited.

The defendants should be sentenced only for assault and battery. This offence was well charged, and they may be sentenced for it, although acquitted of the full offence charged in the indictment. *Commonwealth* v. *Kennedy,* 131 Mass. 584. *Commonwealth* v. *Delehan,* 148 Mass. 254. Of course, the circumstances of aggravation may be considered, but we cannot know that the sentence would be the same.

*So ordered.*