COMMONWEALTH *vs.* ARTHUR L. DEVLIN & others.

Middlesex. December 3, 1956. — March 20, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Homicide. Conspiracy. Evidence,* Business records; On cross-examination, Relevancy and materiality; Photograph; Opinion: expert; Presumptions and burden of proof; Admissions and confessions. *Practice, Criminal,* Exceptions: whether error harmful; Election; Argument by district attorney; Requests, rulings and instructions; New trial; Mistrial. *Pleading, Criminal,* Indictment. *Error,* Whether error harmful. *Words,* "And/or."

At a trial for murder by shooting with a pistol, there was no error harmful to the defendants in the admission in evidence under G. L. (Ter. Ed.) c. 233, § 78, as appearing in St. 1954, c. 442, § 1, of records kept by a dealer concerning the purchase of pistols by the defendants under assumed names, although the trial judge omitted submitting to the jury as required by the statute the questions of fact which he had had to determine before admitting the records, where the omission was not brought to his attention and the defendants admitted that they had purchased the pistols and carried them on the night of the murder. [563]

There was no error at a murder trial in the admission of questions to the defendant on cross-examination as to why he had bought certain pistols which he admitted purchasing and whether he had tried them out, and, on his answering that he had not tried them out, whether he had heard another witness testify that he did and whether he still said that he did not. [563–564]

A photograph of one killed by shooting showing a bullet wound in his chest and a description of the wound by the physician who performed an autopsy on him were admissible at a trial for his murder, although there was no issue of murder committed with extreme atrocity or cruelty. [564]

There was no error at a trial for murder by shooting in the admission of evidence that the defendant had used certain pistols after he had purchased them in order to show that he knew they were in working condition; such evidence did not imply that they had been used in the commission of another crime. [564]

At a trial for murder by shooting, the question whether a struggle had taken place between the victim and one of the defendants who shot him and whose coat button and hat were found at the scene of the shooting was not a proper subject of expert opinion testimony. [564–565]

Commonwealth v. Devlin.

At a murder trial, the exclusion of certain questions by the defendant to an expert called by him as to the expert's opinion on a subject did the defendant no harm where the questions were objectionable in form and the expert subsequently testified to his opinion on that subject. [565]

There was no reversible error at a criminal trial in asking the defendant whether he knew any reason why another witness should give certain testimony if it was not true, to which the defendant answered, "No." [565]

An indictment for murder following the form set out in G. L. (Ter. Ed.) c. 277, § 79, and specifications charging the defendant with murder committed with deliberately premeditated malice aforethought "and/or" in the commission or attempted commission of a crime punishable with death or imprisonment for life charged the defendant with a single crime, murder, committed in either or both of the ways specified and not two separate offences, and motions to quash the indictment and to require the Commonwealth to elect between alleged separate offences were properly denied. [565–566]

A verdict of guilty of murder in the first degree was warranted by evidence that three defendants conspired and prepared to commit a robbery in a certain house mistakenly thought by them to be the residence of one likely to have a substantial sum of money, that they all drove there in an automobile one evening, that two of the defendants entered the house with masks on and with loaded pistols in their hands and frightened the occupants, that an occupant was shot and killed by a pistol held by one of those two defendants, who then ran away down the street, and that the third defendant, who by prearrangement had driven the automobile around near the house to pick up the other two defendants, was arrested shortly after the shooting while parked without lights near by. [566–567]

Where the evidence at a murder trial justified a verdict of guilty of murder in the first degree by reason of a fatal shooting in the course of an attempt to commit armed robbery, and it was therefore proper to deny a motion for a directed verdict of not guilty of murder in the first degree, it was necessarily also proper to deny motions for directed verdicts of not guilty generally and of not guilty of the lesser offences of murder in the second degree, assault with a dangerous weapon, and assault included in the indictment for murder. [568]

At the trial of an indictment, a comment by the district attorney in his argument to the jury that the defendants testified because the Commonwealth had established such a strong case against them that they did not "dare to stand upon their constitutional rights" and "felt they could get out from under this thing" only by testifying, if improper, was not prejudicial where the trial judge instructed the jury that they must disregard that comment, that the defendants had a right to "take the stand," and that the jury were not to assume that the only reason the defendants did so was because the Commonwealth had made a damaging case against him. [568–569]

There was no error at the trial of an indictment in a refusal of the trial judge to grant a request for an instruction that "The defendant is

presumed to be innocent, and this presumption continues throughout the trial and during the deliberations of the jury and is overcome when, and only when, the jury is satisfied that his guilt is established beyond a reasonable doubt." [569]

On appeal following trial of an indictment under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, an assignment of error not based upon an exception has no standing. [569–570]

There was no error at the trial of an indictment in a denial by the trial judge of a request for an instruction the substance of which was adequately covered by the charge. [570]

Assuming that an enterprise joined in by three defendants of committing armed robbery had been abandoned before a fatal shooting by one of the defendants occurred, if the shooting occurred in an effort to escape from the scene of the attempted robbery another of the defendants present there could properly be found guilty of murder in the first degree regardless of whether the enterprise originally included "resisting [capture] unto death." [571]

A defendant at a criminal trial was not entitled to an instruction to the jury which assumed as a fact a matter in dispute. [572]

No error nor abuse of discretion appeared in the denial of motions for a new trial of an indictment for murder addressed to the discretion of the trial judge or in the denial of requests for rulings in connection with the motions raising questions of law which were or could have been raised at the trial. [572–573]

At the trial in the Superior Court of an indictment for murder of one shot by the defendant in a house during an attempted armed robbery, to which the defendant had pleaded not guilty in that court, previous pleas of guilty by him in a District Court to complaints charging him with the murder and with assault in the house upon the victim's wife while armed and with intent to rob were properly admitted in evidence. [573]

On the record of the trial of an indictment, there was no reversible error as to one of the defendants in a reference in the charge to certain evidence as though it had been admitted generally, whereas it had been admitted only against another defendant. [573–574]

The mere facts at a murder trial that the jury, who had been hearing the case for about three weeks, informally suggested to the judge one morning after final arguments that they were prepared to take the case that afternoon after the charge and that it was so submitted to them, following which they deliberated approximately two hours before returning a verdict of guilty, were not grounds for an assumption that they had decided on a verdict prematurely and for declaring a mistrial or granting a new trial. [574]

There was no error in the judge charging the jury at a trial for murder that insanity was not in the case where there was no evidence, medical or otherwise, from which insanity of the defendant could be found. [574]

At a trial for murder committed in a house one evening in February during an attempted robbery, evidence of the defendant's knowledge

of the house and of its location the preceding November was material in connection with evidence that he pointed it out on the afternoon before the attempted robbery to one who participated therein.  [574–575]

No error was shown at a criminal trial in the admission of leading questions which did not appear to have been answered.  [575]

The reply, "What can I say," made by one to police when asked what he had to say following statements in his presence implicating him in a crime was an equivocal response admissible with the statements at his subsequent trial for the crime.  [575]

INDICTMENT, found and returned on February 9, 1955.

The case was tried in the Superior Court before *Fairhurst*, J.

*Wendell F. Grimes*, for the defendant LeBlanc.

*Francis Juggins*, for the defendant Devlin.

*John F. Kelley*, (*Leonard Mullen* with him,) for the defendant Arsenault.

*Lyman C. Sprague*, Assistant District Attorney, (*Robert U. Holden & John P. Forte*, Assistant District Attorneys, with him,) for the Commonwealth.

WILLIAMS, J.   The defendants have been found guilty of murder in the first degree of one Merrill R. Lovinger without recommendation by the jury that sentence of death be not imposed (G. L. [Ter. Ed.] c. 265, § 2, as appearing in St. 1951, c. 203, as amended by St. 1955, c. 770, § 78) and each has been sentenced to death.   G. L. (Ter. Ed.) c. 279, § 4, as appearing in St. 1935, c. 437, § 3.   The executions of the sentences have been stayed pending their appeals, which are before us pursuant to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, accompanied by a summary of the record, a transcript of the evidence, and their respective assignments of error.

The indictment, following the statutory form (G. L. [Ter. Ed.] c. 277, § 79), charged that the three defendants on February 4, 1955, at Newton in the county of Middlesex "did assault and beat one Merrill R. Lovinger with intent to kill and murder him, and by such assault and beating did kill and murder said Merrill R. Lovinger."

In response to motions by the defendants the Commonwealth specified in the case against LeBlanc that the al-

leged murder was committed on the premises at 341 Waverley Avenue, Newton, on February 4, 1955, between the hours of 6 P.M. and approximately 6:40 P.M.; in the case against Arsenault that it was committed "on the street floor of the house located at 341 Waverley Avenue, Newton, in or between the dining room and the living room," and both in that case and in the case against Devlin that it was committed "with deliberately premeditated malice aforethought and/or in the commission or attempted commission of a crime punishable with death or imprisonment for life."

There was evidence in substance as follows. The defendants lived in Waltham and became acquainted while working on different occasions in a lunch room in that city. On October 23, 1954, Devlin and Arsenault visited a gun dealer named Yeaton in Hillsboro, New Hampshire, and Devlin purchased a .45 calibre Colt automatic pistol stating that his name was Arthur Johnson. They returned to Hillsboro on October 30 and Arsenault purchased a similar .45 calibre Colt automatic, stating that his name was Sam Marshall. On November 13 they again called on Yeaton and Devlin bought a .32 calibre automatic pistol of German manufacture. On each visit the purchaser used his assumed name in signing a book in which Yeaton recorded his retail sales, and which contained a form of certificate that "I have never been convicted of a felony against the person or property of another." Devlin thereafter kept possession of the two Colt pistols at his home in Waltham. Arsenault carried away the German pistol and subsequently disposed of it in Mexico. On or about February 1, 1955, Devlin received a long distance telephone call from Arsenault who was "hitchhiking" home from the west. He arrived at Devlin's home on the evening of February 3. On the following morning, Friday, February 4, Devlin and LeBlanc went to Watertown and bought two pairs of brown cotton gloves, a hat and a length of clothes line. They drove in LeBlanc's automobile to Newton and LeBlanc pointed out a house at number 341 Waverley Avenue as the home of one Carl Silverman, a man who, he had told Devlin, was

a wealthy dress manufacturer and was likely to be carrying a substantial amount of money on Fridays.

Arsenault joined the other two about 4 P.M. after they had returned to Devlin's home. Devlin produced the Colt pistols and showed the others the effect of a silk stocking pulled down over the face. The rope was cut up into ten pieces about three feet in length and one longer piece. A hat was purchased for Arsenault.

At about six o'clock the three defendants started for Newton in LeBlanc's automobile. They drove to 341 Waverley Avenue and seeing two automobiles parked in front of the house circled around a block formed by Waverley Avenue, Brackett Street, Park Avenue, and Green Park two or three times. They stopped on Park Avenue, and Devlin and Arsenault took out their pistols and pulled silk stockings down over their faces. Arsenault had the pieces of rope in his pocket. They then proceeded to the corner of Green Park and Waverley Avenue on the southwesterly corner of which number 341 Waverley Avenue was located. It was agreed that Devlin and Arsenault would enter the house and LeBlanc would drive around, coming back every ten minutes and, if he saw that the lights in the front of the house were out, would stop for the other two. Devlin lent him a watch so that he could check on the time. Devlin and Arsenault, masked with the stockings and carrying the pistols, which were loaded, went to the front entrance of the house and opened a glass storm door. Devlin rang the door bell and Fanna Lovinger, the daughter of one Henry Mintz who owned the house, came to the door. The door "stuck" slightly and she heard a sound "like tapping on the lock from the outside." She called out, "Just a minute, the lock is stuck." The door opened to her right and the two defendants with hats pulled low over their masks stepped in with the pistols in their hands. Devlin was slightly ahead and pushed Mrs. Lovinger back with his left hand. She screamed and Devlin said, "All right, stand back and keep quiet and everything will be all right." She started to pull on his left sleeve and said, "Don't shoot my mother.

Don't hurt my mother." Arsenault ran by them to the kitchen at the end of the hall where Mrs. Mintz was washing the supper dishes. She also screamed and ran through the dining room into the living room at the front of the house. Arsenault followed her and when he was in the dining room near the living room entrance, Merrill Lovinger, the husband of Fanna, stepped out of a side room. He was heard to say, "There will be none of this here," and almost immediately a shot was fired from the pistol held by Arsenault. Lovinger fell to the floor. He was shot through the heart, the bullet entering to the left of the midline of the body between the third and fourth ribs, and lodging in the lower back between the eleventh and twelfth ribs. It was not a so called "contact" shot, but in the opinion of ballistic experts was fired at a distance of from two and a half to six inches from the body. Lovinger died before reaching the hospital, the cause of death being "gunshot wound of the chest with perforation of the heart and lungs and internal hemorrhage." After the shot the two defendants left by the front door and ran down Waverley Avenue in a northerly direction. Devlin threw away his hat and silk stocking and Arsenault the rope. The rope was later found in front of 259 Waverley Avenue. Arsenault's hat and a button of his coat were found in the house at the scene of the shooting. Arsenault boarded a westerly bound street car on Tremont Street near the northerly end of Waverley Avenue and shortly thereafter was arrested in Watertown Square. Devlin was arrested on Tremont Street when apparently seeking to board another street car after threatening to shoot a police officer.

Meanwhile, after the other two defendants left the automobile to enter the house, LeBlanc drove around through Park Avenue, turned left from Green Park into Waverley Avenue, and drove in a northerly direction toward Tremont Street. He made a U turn and came back up Waverley Avenue. Seeing an automobile which he suspected was following him and which in fact contained two police officers

he continued in a southerly direction by the police automobile and the Mintz house. He was arrested at about 7:30 P.M. on the same evening while parked without lights on Waverley Avenue a short distance from the scene of the shooting.

There was little dispute as to the objective facts disclosed by the evidence. Each defendant made incriminating admissions to the police.

There was evidence that Arsenault told a police officer, Lieutenant McMullen, that he said to Mrs. Mintz, "Stop your screaming, lady, I am not going to hurt you. All I want is money," and that Devlin told police captain Crowley that when he and Arsenault were running away he asked Arsenault, "What . . . did you shoot him for" and Arsenault said, "He grabbed the barrel of my gun. What . . . would you do?" The statements were admitted respectively as evidence only against the persons who made them.

Each defendant testified at the trial. Arsenault and Devlin admitted the purchase of the pistols from Yeaton, the use of the assumed names, and their prior convictions of felonies. In their testimony they described in similar terms the plan to commit armed robbery in the house at 341 Waverley Avenue and their entrance into the house armed with the pistols purchased from Yeaton. LeBlanc denied knowledge of the planned robbery until the stop was made to don the masks on Park Avenue but admitted that he then agreed to drive around the neighborhood as the others suggested and that he expected to participate in the receipts of the robbery.

A principal contention of each defendant was that at some time he abandoned the enterprise. Arsenault and Devlin testified that after they rang the door bell they noticed the name H. Mintz on the door plate, realized that it was not Silverman's house and resolved to leave. However, on observing that LeBlanc had left and the door was opened, they entered the house but without intent to rob and attempted to convince the screaming women of their peaceful purpose. Devlin further testified that when the shot was fired he had gone out by the front door and was

standing on the steps. Arsenault testified to the shooting and to the way he held the pistol which had a safety device on the side and also in the grip. He said that, to fire it, pressure was required both on the trigger and on the grip; that he had his right forefinger through the trigger loop and his thumb on top of the safety; that Lovinger grabbed his coat and then the gun; and that it went off and Lovinger fell. In cross-examination he admitted that it was the intent to hold up the occupants of the house and tie them up if necessary. LeBlanc testified that he abandoned the venture as soon as the other two left the automobile and thereafter took no part in it.

Devlin's assignments of error 1, 9–12, and Arsenault's assignments 1, 6–10 refer to evidence respecting the purchase of the pistols from Yeaton and testimony relating thereto. Yeaton testified without objection by any defendant to the respective purchases and the accompanying conversations but Arsenault and Devlin excepted to the admission of his records concerning the purchases of the two Colt pistols. These records having been found by the judge to have been kept in the regular course of business were admissible under G. L. (Ter. Ed.) c. 233, § 78, as appearing in St. 1954, c. 442, § 1. This statute, however, provides that "in a criminal proceeding all questions of fact which must be determined by the court as the basis for the admissibility of the evidence involved shall be submitted to the jury . . . for its final determination" and this the judge later omitted to do. As it does not appear that the omission was brought to his attention, that any exception was taken to his failure to instruct the jury, or any motion made to strike out the evidence, there was no reversible error in respect to it. LeBlanc took no exception to the admission of the records and it is plain that Arsenault and Devlin were not harmed. Both admitted the purchases, that they signed assumed names, and that the two Colt pistols were the ones carried by them on the night of the murder. There was no error in admitting questions to Devlin in cross-examination as to why he bought the guns

and whether he "tried" them out. On his answering that he did not try them out he was asked if he heard Yeaton testify that he did and if he still said that he did not. This form of question, to which exception was saved, was permissible in the discretion of the judge. By bringing to the attention of the witness the contrary testimony of another it might cause the witness to change his testimony. It results in the repetition of evidence adverse to that offered by the witness and doubtless would not be allowed if emphasis on the contrary evidence appeared to be the examiner's primary purpose. There was here no error in the exercise of discretion. See *Smith* v. *Boston Elevated Railway,* 208 Mass. 186, 187.

Assignments 2 and 3 of Devlin and Arsenault relate to the admission of a photograph of the deceased showing the bullet wound in his chest and to the description of it by the physician who performed the autopsy. Although there was no issue of extreme atrocity or cruelty the photograph was admissible. It enabled the jury to visualize the location of the wound and to understand expert testimony concerning the distance from the victim the pistol was held when it was fired. *Commonwealth* v. *Robertson,* 162 Mass. 90, 97. *Commonwealth* v. *Osman,* 284 Mass. 421, 423, and cases cited. *Commonwealth* v. *Clark,* 292 Mass. 409, 410–411. *Commonwealth* v. *Galvin,* 323 Mass. 205, 215. The physician properly was allowed to describe the wound.

Assignments 4 and 5 of Devlin and Arsenault relate to the admission of testimony by police lieutenant O'Neil that Devlin said he had used the guns after he had bought them and to the refusal of the judge to strike out the testimony. There was no error. The evidence tended to show that by using them Devlin knew that the guns were in working condition, and did not imply that they had been used unlawfully in the commission of some other crime.

Devlin's assignment 6 is to the exclusion of a question by him proposed in conference with the judge that Van Amberg, his ballistic expert, be asked, "Based upon this physical evidence which he sees before him, which he has seen, which

he has examined, the testimony which he has heard in regard to this physical evidence, has he formed any opinion as to whether a struggle took place that night, February 4, 1955." The physical evidence to which the question apparently referred was that after the defendants left the premises the button of Arsenault's coat and his hat were found in the dining room. The question concerned a matter which was not properly the subject of expert testimony. There was no error.

Devlin's assignments 7 and 8 are to the exclusion of the following questions to the same witness. "Based upon your examination of the evidence in this case, the physical evidence, the clothing of the deceased, your examination of . . . Arsenault's gun, the various other articles which you examined, is it your opinion that it is consistent with the gun having been fired from a distance of three inches?" and "you agree with Sergeant Collins [who had testified for the Commonwealth] that the gun might have been fired from a distance of two and a half inches?" The questions were objectionable in form and their exclusion was not harmful. The witness was allowed to testify that in his opinion the shot was fired from a distance of not less than three and not more than four to six inches.

Devlin's assignment 13, Arsenault's assignment 11. Lieutenant McMullen of the Newton police had testified that Arsenault told him that he said to Mrs. Mintz, "Stop your screaming, lady, I am not going to hurt you. All I want is money." Following a denial by Devlin that Arsenault said this to Mrs. Mintz he was asked if he knew any reason why McMullen should say that if it was not true. He answered, "No." The question was of doubtful competency but its admission was not reversible error.

Devlin's assignments 14 and 15, Arsenault's assignments 18 and 19. At the conclusion of the evidence, Devlin and Arsenault each filed two motions, one to quash the indictment on the ground that it is "duplicitous" in that it charges the commission of two separate and distinct offences in one count, and one to require the Commonwealth to elect on which of the offences set forth in the specifications it would

proceed; namely, murder with deliberately premeditated malice aforethought, or in the commission or attempted commission of a crime punishable with death or imprisonment for life. The validity of the statutory form of indictment for murder was settled by *Commonwealth* v. *Jordan*, 207 Mass. 259, 265–268, affirmed in *Jordan* v. *Massachusetts*, 225 U. S. 167. See *Commonwealth* v. *DiStasio*, 294 Mass 273, 279. It charged the defendants with a single crime, that of murder. *Commonwealth* v. *Desmarteau*, 16 Gray, 1, 11. *Commonwealth* v. *Min Sing*, 202 Mass. 121, 131–132. *Commonwealth* v. *Scicchitani*, 240 Mass. 402, 404. *Commonwealth* v. *DiStasio*, 298 Mass. 562. The vague expression "and/or" used by the Commonwealth in its specifications (see *Hanson* v. *Bradley*, 298 Mass. 371, 378) must be taken to mean that the murder was committed in either or both of the ways specified. The specifications did not enlarge the scope of the indictment but negatived any claim of murder committed with extreme atrocity or cruelty and restricted the Commonwealth to proof of murder by the other methods set forth in the statute. G. L. (Ter. Ed.) c. 265, § 1. *Commonwealth* v. *Kelley*, 184 Mass. 320, 324. *Commonwealth* v. *Haywood*, 247 Mass. 16, 19. *Commonwealth* v. *Sacco*, 255 Mass. 369, 412. *Commonwealth* v. *DiStasio*, 294 Mass. 273, 278. The indictment did not charge two separate offences and the motions were rightly denied. .

Devlin's assignments 16–21, Arsenault's assignments 22–27, and LeBlanc's assignment 6 relate to the denial of motions of Devlin and Arsenault that the jury be directed to return verdicts of not guilty of murder in the first degree, murder in the second degree, manslaughter, assault with a dangerous weapon, assault, and "not guilty," and the denial of a motion of LeBlanc for the direction of a verdict of "not guilty." It could be found that all three defendants planned to commit a robbery in the house numbered 341 Waverley Avenue and so far carried their plan into effect that their acts constituted an attempt to commit armed robbery (G. L. [Ter. Ed.] c. 265, § 17) or the crime defined in G. L.

(Ter. Ed.) c. 265, § 21. *Commonwealth* v. *Kennedy,* 170
Mass. 18. *Commonwealth* v. *Peaslee,* 177 Mass. 267, 271–
272. *Commonwealth* v. *Cline,* 213 Mass. 225, 227. *Commonwealth* v. *Morrison,* 252 Mass. 116, 124. *Commonwealth* v.
*Smith,* 312 Mass. 557, 560. A "person engaged in the commission of an unlawful act is legally responsible for all the
consequences which may naturally or necessarily flow from
it" and it is "not essential that murder should be a part of
the original plan, if it was one of the probable consequences
of the robbery" while armed with deadly weapons. *Commonwealth* v. *Devereaux,* 256 Mass. 387, 395. *Commonwealth* v. *Campbell,* 7 Allen, 541, 543–544. If two or more
"combine to commit a robbery and a homicide results, each
is criminally responsible for the acts of his associates in the
perpetration of the common design for which they conspired;
and it is no defence for the associates engaged with others in
the commission of a robbery, that they did not intend to
take life in its perpetration, or that they forbade their companions to kill." *Commonwealth* v. *Devereaux, supra,* page
392. The motions were rightly denied. The judge would not
have been justified in ruling that the evidence did not warrant the jury in finding that the killing of Lovinger was in
the attempted commission by all three defendants of a crime
punishable by imprisonment for life, and therefore murder
in the first degree. Whether the killing could also be found
to have been with deliberately premeditated malice aforethought need not be discussed. See *Commonwealth* v.
*Gricus,* 317 Mass. 403, 411. "Whether the original felonious
design included homicide or went no further than robbery,
it supplied the malice aforethought necessary, if homicide
was committed in carrying out the design . . . to render all
who actually participated in carrying it out guilty of murder." *Commonwealth* v. *Venuti,* 315 Mass. 255, 258. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 315. *Commonwealth*
v. *Devereaux,* 256 Mass. 387, 394, 395. *Commonwealth* v.
*Gricus,* 317 Mass. 403, 411–412. *Commonwealth* v. *Lussier,*
333 Mass. 83, 92. As the indictment charged only a single
offence a general verdict of murder in the first degree was

properly returnable without special finding of the particular manner in which it was committed. *Commonwealth* v. *Desmarteau,* 16 Gray, 1, 11. The denial of the motions for directed verdicts of "not guilty" generally and of "not guilty" of murder in the second degree, assault with a dangerous weapon, and assault, lesser offences included in the indictment (see *Commonwealth* v. *Crowley,* 167 Mass. 434, 442; *Commonwealth* v. *Novicki,* 324 Mass. 461, 467), necessarily followed the denial of the motions relating to the principal offence. Any error in denying the motion relating to manslaughter was cured by the judge in charging, correctly, that the evidence did not warrant a verdict of manslaughter.

Devlin's assignment 22, Arsenault's assignment 28, and LeBlanc's assignment 7 are to the statement of the district attorney in his final argument to the jury that "the Commonwealth in putting the case in laid up such a strong, such a complete, such a conclusive, such a damning case against these defendants that they didn't dare to stand upon their constitutional rights and the only way they felt they could get out from under this thing was to get up on that witness stand."

In his charge the judge told the jury to disregard these remarks as made "inadvertently"; that the defendants had a right to "take the stand"; and that they (the jury) were not to assume that the only reason they took the stand was because a damaging case had been made against them.

The remarks of the district attorney were comments not on the failure of the defendants or any one of them to testify but on the reason why they did so. If the remarks were improper, the instructions of the judge were adequate to protect their rights. *Commonwealth* v. *White,* 147 Mass. 76. *Commonwealth* v. *Richmond,* 207 Mass. 240, 250–251. *Commonwealth* v. *Domanski,* 332 Mass. 66, 69.

It is the general rule that an irrelevant and improper course of argument is not matter of exception, if the jury are properly instructed as to the weight to which such arguments are entitled. It must be assumed that the jury

understood and acted upon the directions given by the judge. *Commonwealth* v. *Byce,* 8 Gray, 461, 462. *Smith* v. *Whitman,* 6 Allen, 562, 564–565. *Commonwealth* v. *Cunningham,* 104 Mass. 545, 547. *Commonwealth* v. *Richmond, supra,* page 251. *Commonwealth* v. *Godis,* 266 Mass. 195.

Devlin's assignment 23 is to the refusal to grant his request that "The defendant is presumed to be innocent, and this presumption continues throughout the trial and during the deliberations of the jury and is overcome when, and only when, the jury is satisfied that his guilt is established beyond a reasonable doubt."

It is settled that the presumption of innocence is not evidence and "does not run with the defendant through the trial and continue with him through all its stages." *Commonwealth* v. *Madeiros,* 255 Mass. 304, 316. In charging a jury "Nothing is required beyond a plain statement that the presumption of innocence means that the finding of an indictment by the grand jury or the record on an appeal on a complaint from a finding of guilty in a district court are not to be regarded as circumstances tending to criminate the defendant or creating against him unfavorable impressions, and that he is not to be found guilty upon suspicion or conjecture but only upon evidence produced in court." *Commonwealth* v. *De Francesco,* 248 Mass. 9, 13. *Commonwealth* v. *Madeiros, supra,* pages 315–316. See *Commonwealth* v. *Mitchell,* 248 Mass. 536, 538–539; *Commonwealth* v. *Powers,* 294 Mass. 59, 63–64.

The refusal to instruct in the form presented by the request was not error. See *Commonwealth* v. *Belenski,* 276 Mass. 35, 50; *Commonwealth* v. *Powers, supra,* page 63. Its essential vice is that it erroneously implies an evidential element in the presumption. The judge charged substantially in accordance with the requirements set forth in the *De Francesco* and *Madeiros* cases. See *Commonwealth* v. *Venuti,* 315 Mass. 255, 259–260.

Devlin's assignments 24–29, 31, 33, 35, 36, 38–40 and 42–44, all of which were based on the denial of the defendant's requests for rulings, need no discussion. It appears

that the requests to which reference was made in assignments 27 and 33 were granted and no exceptions were taken to the denial of the others. *Commonwealth* v. *McDonald,* 264 Mass. 324, 336. They were substantially covered by the charge.

Devlin's assignment 30 is to the denial of his request that "The jury must give the benefit of any reasonable doubt to the defendant; that a greater degree of certainty is required to convict a defendant of a criminal charge than might satisfy the jury in their ordinary business affairs and if the evidence can be explained reasonably upon any other hypothesis than that of the defendant's guilt, the jury must find the defendant not guilty." The substance of this request was amply covered by the charge.

Devlin's assignment 32 is to the denial of his request that "To convict the defendant in this indictment, evidence of his intent is a prerequisite. The burden is upon the Commonwealth in order to sustain a charge of first degree murder in the ordinary form of indictment to prove deliberate premeditation and malice aforethought." There was no error. The request is an incomplete and misleading statement of the requirements for proof of a murder which could be found to have been committed in the attempted commission of a felony.

Devlin's assignment 34 is to the denial of his request, "If the court rules that the Commonwealth may proceed under the indictment as amplified by the specifications of deliberately premeditated malice aforethought, the Commonwealth must prove beyond a reasonable doubt that Devlin took some active part in the killing of Merrill R. Lovinger." The request states a hypothesis which could be no part of an instruction to the jury and erroneously assumes that the indictment was amplified by the specifications. The judge gave adequate instructions as to the responsibility of Devlin for the acts of Arsenault and was not obliged to adopt the language suggested by the request. *Commonwealth* v. *Sherman,* 294 Mass. 379, 394. There was no error.

Devlin's assignment 37 is to the denial of his request, "Once Devlin offered evidence of an abandonment of any intent to commit a crime punishable by death or life imprisonment, the burden of proof is upon the Commonwealth to prove beyond a reasonable doubt that there was no such abandonment and if the jury finds that the Commonwealth has not sustained this burden of proof then they cannot find Devlin guilty of murder committed in the commission of a crime punishable by death or life imprisonment as charged in the indictment and specifications thereto." The judge's charge on the issue of abandonment was adequate and in accordance with the rule stated in *Commonwealth* v. *Green,* 302 Mass. 547, 555, and affirmed in *Commonwealth* v. *Lussier,* 333 Mass. 83, 90–91. The burden upon the Commonwealth was, as the judge stated, to prove beyond a reasonable doubt that each defendant participated in the crime. It was not required to prove a negative and instructions in the form requested would have tended to confuse the jury. There was no error.

Devlin's assignment 41 is to the denial of his request, "If it be found that the original plot, if there were one, had been abandoned or exploded or ended, the burden of proof is upon the Commonwealth to show that Devlin not only entered into the combination, confederacy or plot to commit an offence or crime punishable by death or life imprisonment but the Commonwealth must prove beyond a reasonable doubt that such original undertaking extended to 'resisting unto death' and by force and violence their capture or apprehension, and in failure of this proof, the jury must find for the defendant Devlin." The defendant was not entitled to this request. If the shooting followed an abandonment of the enterprise but occurred in an effort to escape from the scene of the attempt Devlin as well as Arsenault could be found guilty regardless of an original undertaking extending to "resisting unto death." See *Commonwealth* v. *Lussier,* 333 Mass. 83.

Devlin's assignment 45 is to the denial of his request, "If the jury should find that while the defendants were engaged

in the commission or attempted commission of a crime punishable by death or life imprisonment, and one of them accidentally shot and killed a person, Devlin who had no part in such shooting cannot be found guilty of a murder in the commission or attempted commission of a crime punishable by death or life imprisonment." This request assumes as a fact that Devlin, who, it could be found, was present with a loaded pistol prepared to assist Arsenault, "had no part" in the shooting. It is plain that the judge could not properly so instruct the jury. *Liberatore* v. *Framingham*, 315 Mass. 538, 543. If Lovinger could be said to have been accidentally shot, it was a shooting, concerning which the only evidence to rebut the inference of intention was Arsenault's testimony that the pistol was fired in a struggle with Lovinger for its possession. It could not be ruled that in this situation Devlin could not be found guilty. See *Commonwealth* v. *Lussier*, 333 Mass. 83.

Devlin's assignment 46, Arsenault's assignment 46, and LeBlanc's assignment 8 are to the denials of their respective motions for a new trial on the grounds that the verdict is against the evidence, the weight of the evidence, and the law, and that the evidence is insufficient to sustain the verdict which, if allowed to stand, will work a miscarriage of justice. The motions were addressed to the sound discretion of the trial judge and there is nothing to indicate that it was not properly exercised. *Commonwealth* v. *Millen*, 289 Mass. 441, 487–488. Questions of law which could have been, but were not, raised at the trial cannot be raised as of right on a motion for a new trial. *Commonwealth* v. *Vallarelli*, 273 Mass. 240, 248, and cases cited. *Commonwealth* v. *Sheppard*, 313 Mass. 590, 611.

Devlin's assignment 47, to the refusal to rule in connection with his motion that "As a matter of law the evidence introduced at the trial did not warrant the jury finding the defendant guilty of murder committed with deliberate premeditation and malice aforethought"; and assignment 48, to the refusal to rule that the defendant was not informed fully, plainly, substantially and formally of the nature of

the crime or offence with which he was charged, are without merit and require no discussion.

These requests involved questions of law which were or could have been raised at the trial and the judge was not required to consider them upon a motion for a new trial. *Commonwealth* v. *Osman*, 284 Mass. 421, 426. *Commonwealth* v. *Polian*, 288 Mass. 494, 501.

Devlin's assignment 49 presents no question of law.

Of Arsenault's fifty-four assignments of error many are substantially the same as those presented by Devlin and need not be further considered.

Arsenault's assignments 13, 16, and 17 relate to the admission of evidence that, when arraigned in the District Court on the day after the murder of Lovinger, he pleaded guilty to a complaint charging him with the murder and also guilty to a complaint charging him with assault while armed on Fanna Lovinger with intent to rob. A plea of guilty in a District Court is admissible at a trial upon a subsequent indictment for the same offence. *Commonwealth* v. *Haywood*, 247 Mass. 16, 19–20. The plea is an admission of the material facts charged. *Commonwealth* v. *Ayers*, 115 Mass. 137. Although Arsenault pleaded not guilty to the indictment for murder in the Superior Court his prior admission was inconsistent with his later contention and properly could be introduced in evidence. *Morrissey* v. *Powell*, 304 Mass. 268. Plainly his plea to the charge of assault with intent to rob Mrs. Lovinger was also competent as an admission of his intent in entering the Mintz house.

Arsenault's assignment 30 refers to a considerable quoted portion of the charge, asserted by him to be "highly improper and prejudicial" to the defendant's rights. The defendant saved no exception to this part of the charge and in our opinion there is no basis for his contention.

Arsenault's assignment 31 is to an alleged misquotation of evidence by the judge in his charge to which also there was no exception. The judge referred to a statement made by Devlin to Captain Crowley that Arsenault said, "He [Lovinger] grabbed the barrel of my gun. What . . . would

you do?" as if the statement was generally in evidence rather than admitted, as it was, only against Devlin. There was no reversible error. The jury had been told that it was their recollection of the evidence which governed. Arsenault was not harmed as he himself testified that Lovinger grabbed his gun.

Arsenault's assignment 32 refers to alleged "misconduct of the jury in deciding the case" prior to arguments of counsel and the charge. The jury informally brought to the attention of the judge after final arguments had been completed in the morning of June 30 that they were prepared to take the case that afternoon after the charge and it was accordingly submitted to them. There is no basis for an assumption that they had then decided on their verdicts. They had been locked up for about three weeks and it is understandable that they wished to complete their task. They deliberated approximately two hours before returning their verdicts. There was no sound basis for declaring a mistrial at the time (*Commonwealth* v. *Clark*, 292 Mass. 409, 416; *Commonwealth* v. *Mabey*, 299 Mass. 96, 99–100) or for later granting a new trial.

Arsenault's assignment 33 is to "that portion of the judge's charge beginning with the words 'There is no claim in this case that Arsenault was insane in a legal sense . . .' and ending with the words 'But the fact of insanity is not in the case.'" There was no error. There was no evidence from which insanity could be found and medical experts called by the defendant testified that he was not insane.

Arsenault's other assignments 34–35 and 47–54 require no discussion. They involve principles of law heretofore considered in connection with Devlin's assignments of error. In so far as the requests accurately stated the law they were fully covered by the charge.

LeBlanc's assignments 1 and 5 relate to the admission of his conversation with one Gerald F. Bradley, to the refusal to strike out the latter's testimony, and to the remarks of the district attorney. Bradley who worked in Bradley's Filling Station in Waltham testified that in November, 1954,

he drove to Green Park to fix a flat tire for one Mitchell Mintz and took LeBlanc with him to show him, Bradley, where the street was; that he changed the tire and left the automobile in the driveway behind 341 Waverley Avenue; that LeBlanc said, "Gee, that is a nice house," and commented that it "was probably worth money." The testimony was material to LeBlanc's knowledge of the house and its location in connection with the evidence that he pointed out the house to Devlin on the afternoon of February 4.

The remarks of the district attorney which LeBlanc assigns as error appear to have been made in his opening statement without objection or exception.

LeBlanc's assignments 2 and 3 are to leading questions which were admissible in the discretion of the judge. *Guiffre* v. *Carapezza*, 298 Mass. 458. It does not appear that they were answered.

LeBlanc's assignment 4. There was testimony that Arsenault was brought into the presence of LeBlanc at the police station and repeated before him his statement that LeBlanc knew that he and Devlin were going to Newton to rob a house, that they had guns, and that they put on the silk stockings in front of him. When LeBlanc was asked, "What do you say now, Russell" he said, "What can I say." This reply was not a denial, but an equivocal response subject to the interpretation that he meant it was useless to deny it. There was no error in allowing the testimony to stand.

Each defendant filed in this court a motion for a new trial based on the same grounds stated in his motion for a new trial filed in the Superior Court and in addition the alleged misconduct of the jury. These motions concern matters with which we have already dealt. After consideration of all of the evidence and the weight which should properly be given it we are satisfied that justice does not require the new trial of any one of the defendants. See G. L. (Ter. Ed.) c. 278, § 33E, as amended; *Commonwealth* v. *Gricus*, 317 Mass. 403, 407.

*Judgments affirmed.*