COMMONWEALTH *vs.* GEORGE W. WOODS.

Barnstable.   January 5, 1959. — April 8, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Manslaughter.   Wanton or Reckless Conduct.   Evidence,* Photograph, Relevancy and materiality.   *Practice, Criminal,* Exceptions: whether error harmful.   *Error,* Whether error harmful.

A finding of guilty at a trial for involuntary manslaughter was warranted by evidence that during a struggle between the defendant and a three year old boy in a bathroom one evening the defendant slapped the boy, who sank down and possibly "hit his head," that the defendant at that time was "angry" and "really didn't care," that he again slapped the boy when he was on the floor and left him there and later picked him up by one arm and "flopped him into bed," that the boy died that night as a result of an injury to his head resulting in a subdural hematoma, and that such a hematoma could be caused by a blow by hand or fist.   [9–10]

Photographs of the body of a child who died as a result of an injury to his head were admissible at the trial of an indictment for causing his death to illustrate or aid the testimony of a pathologist.   [10]

At the trial of an indictment for causing the death of a child, error on the part of the judge in not instructing the jury that testimony by the defendant's wife that she previously had said that her husband struck the child "in anger" should be limited to the witness's credibility and not taken as evidence against the defendant was not prejudicial to him in view of admissions by him already in evidence that he had acted in anger toward the child and testimony by him and his wife to that effect.   [10–11]

At the trial of an indictment for causing the death of a child who died as the consequence of a blunt injury to the head with resulting subdural hematoma and brain swelling, testimony of a physician that a hematoma may result from a blow by hand or fist as in boxing was relevant in view of evidence of acts of the defendant in slapping the child.   [11]

In view of instructions to the jury at the trial of an indictment for manslaughter correctly stating the criteria for determining wanton or reckless conduct and dealing with the defendant's "failure to regard the consequences [of his act] or his indifference to what the consequences of his act might be," there was no error in the judge's failure to give instructions as to the difference between negligence and gross negligence on the one hand and wanton or reckless conduct on the other or that the essence of the wrong was "intentional conduct."   [11–12]

INDICTMENT, found and returned on October 2, 1957, charging manslaughter.

The indictment was tried before *Dewing*, J.

*Allan M. Hale*, (*Robert W. MacDonald* with him,) for the defendant.

*John P. Sylvia, Jr.*, Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J. This is an appeal under G. L. c. 278, §§ 33A–33G, as amended. The defendant was found guilty of involuntary manslaughter in causing the death, on May 3, 1957, of Michael E. Mooney, the three year old natural son of the defendant's wife. The defendant excepted to the denial of his motion for a directed verdict and to evidential rulings and the failure to give certain instructions. The alleged errors were duly assigned. There was no prejudicial error.

The evidence included transcripts of interviews with the defendant before he was charged with an offence, introduced by the defendant, the testimony of the interviewing officers, and admissions by the defendant at the trial. The jury could have found as follows: Michael, a healthy boy, recently brought into the defendant's home, developed difficulty in having regular bowel movements and sometimes dirtied himself. The defendant and his wife undertook to train him by a regimen which included daily slappings and spankings, sometimes severe. On May 3, at about 6:30 P.M. the defendant sat Michael on the toilet seat and was with him in the bathroom for about twenty minutes. Pressure on Michael's abdomen proving unavailing, the defendant undertook to give Michael an enema. A struggle ensued, so severe that the defendant was unable to administer the enema and Michael at the end of it was "hysterical to an extent." A photograph in evidence showed a very narrow space in front of the seat and the wash bowl extending into that space where the defendant was holding Michael. "I slapped him and he sank into the bowl and turned to the right. . . . [I]t is very possible he hit his head. . . . I was angry and broke out in a sweat." Q. "At that time you

really didn't care?" A. "No, I didn't." The defendant also slapped Michael when he was on the floor. The defendant left him on the floor, then came back and picked him up by one arm and "flopped him into bed." Later that evening Michael when watching television stiffened up and became unconscious. The defendant and his wife noticed a bruise ("very mushy, it was soft") on Michael's head on the right side which swelled and discolored on the way to the doctor's office.

Michael was taken to a hospital, operated on, and died. A post mortem examination on May 5, 1957, showed that he died as a result of a blunt injury to the head with resulting subdural hematoma and resulting brain swelling. The operation was on the left side of the head where the major blunt injury was visible. There was "swelling and . . . alteration in the shape of the head over the front of the head here on the left side, and some here on the right side as well." The condition of the tissues adjacent to the blood clot showed that it was "a recent injury . . . about two days old, approximately." Such a hematoma "can be caused by a hand or fist, as in boxing, these are fairly common."

The defendant's wife testified that earlier in the day on May 3 she had found Michael lying in the yard of the home. When she brought him into the house, "he was unconscious; he was stiff, rigid." She put water on him, took off his clothes and sat him on the toilet seat. A neighbor testified that she had been called in and that she had seen Michael slumped on the seat. There was also testimony that earlier in the week Michael had fallen down the steps at a market and that on the previous Sunday the defendant, while in the yard, had slapped Michael on the left side of the face and Michael had fallen down. It was also in evidence that Michael had banged his body into the sides of the shower when placed therein under the running water and in the course of the regimen, sometimes as a punishment. Photographs after death showed black and blue areas generally distributed over his body.

There was no error in not directing a verdict. The evi-

dence took the cause of the injury out of the realm of specu-
lation. The jury could accept parts and disbelieve parts of
the testimony. They could find that the defendant's blow
or blows on May 3 caused the death and that the defendant
acted wantonly or recklessly.

It is not clear that the defendant saved an exception to the
admission of photographs of the body of the deceased child.
In any event, they were admissible for the purpose received,
to illustrate or aid the testimony of the pathologist. *Com-
monwealth* v. *Osman,* 284 Mass. 421, 423. *Commonwealth* v.
*Makarewicz,* 333 Mass. 575, 584. *Commonwealth* v. *Devlin,*
335 Mass. 555, 564. See *Howe* v. *Boston,* 311 Mass. 278,
281–282.

.It was error, but not prejudicial or reversible, to decline to
instruct the jury that testimony of a previous statement by
the defendant's wife was not evidence against the defendant.
The district attorney asked the wife certain questions about
her previous testimony. After a number of such questions
counsel for the defendant asked for an instruction, and the
judge gave instructions which were not objected to which
ended with the statement, "Statements of themselves are
not evidence until introduced into the record. Anything
this witness testifies to is evidence, and the jury shall . . .
give it such weight as they think it's deserving." No excep-
tion was taken to this statement. A few questions later the
district attorney asked, "Well, now, you did say, did you
not, that your husband struck him in anger?" Counsel for
the defendant objected and requested "that the jury be
instructed that that is just limited to what the witness has
testified to, that it shall not be taken into evidence against
this defendant." The judge said: "She's waived all rights
here; and now the district attorney is asking her as to
whether she made certain statements relative to her actions
and her husband's actions. I'll permit it." The defendant
saved an exception.

We think the exception was saved only in respect of the
particular question. The request called for an instruction
that the testimony, in view of the request, was limited to

the witness's credibility. *Salonen* v. *Paanenen,* 320 Mass. 568, 575. *Wheeler* v. *Howes,* 337 Mass. 425, 427.

The defendant's prior statements already introduced in evidence by the defendant included several admissions by the defendant that he had acted in anger. The defendant later testified that when Michael was in the bathroom he was struggling with the defendant most of the time, that he, the defendant, was angry and broke out in a sweat and slapped Michael. In earlier testimony the defendant's wife had testified without objection that she had said to the police "both of us lost our patience" and that she might have said that the defendant struck Michael in anger. In these circumstances the failure to instruct as requested in respect of the answer given was not prejudicial error. *Commonwealth* v. *Capalbo,* 308 Mass. 376, 383. *Commonwealth* v. *Drolet,* 337 Mass. 396, 399.

It was not error to receive and refuse to strike the testimony of a physician that a hematoma may result from a blow by hand or fist as in boxing, in response to the question "Could the hematoma, as you found it there, be caused by a heavy slap or a heavy hit with a human hand?" The testimony was received subject to later evidence to make it relevant. There was such evidence.

It was not error to fail to instruct the jury as to the difference between negligence and gross negligence on the one hand and wanton or reckless conduct on the other or in failing to instruct that the essence of the wrong is "intentional conduct." The judge correctly stated the criteria for determining wilful, wanton or reckless conduct. "[N]egligence and wilful and wanton conduct are so different in kind that words properly descriptive of the one commonly exclude the other." *Miller* v. *United States Fid. & Guar. Co.* 291 Mass. 445, 447. *Commonwealth* v. *Welansky,* 316 Mass. 383, 400. Though it would have been appropriate to make a statement of the distinction, it was not error to omit such. While "[w]anton or reckless conduct is the legal equivalent of intentional conduct" (*Commonwealth* v. *Sostilio,* 325 Mass. 143, 145; see *Commonwealth* v. *Pierce,*

138 Mass. 165, 178) there is a well understood, substantial difference. *Sheehan* v. *Goriansky,* 321 Mass. 200, 204. *Commonwealth* v. *Welansky, supra,* 401. The defendant admits that the judge "did instruct the jury with respect to the defendant's failure to regard the consequences or his indifference to what the consequences of his act might be." The precise request as to intention was subject to misconstruction and would have required elaboration. There was no need to say more than the judge did in a full statement in respect of wanton and reckless conduct.

*Judgment affirmed.*