COMMONWEALTH *vs.* ANTHONY NOVICKI & others.

Middlesex.    March 7, 1949. — June 29, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Robbery. Larceny. Pleading, Criminal,* Indictment. *Practice, Criminal,* Ordering verdict, Verdict, Sentence.

An indictment under G. L. (Ter. Ed.) c. 265, § 17, as appearing in St. 1943, c. 250, § 1, charging armed robbery, charged also the offence, necessarily included therein, of larceny.

At the trial of an indictment charging several defendants with the crime of armed robbery of money from the person of a cashier, the jury should have been instructed to return a verdict of not guilty of armed robbery where there was evidence that money in the custody of the cashier was stolen by the defendants but there was no evidence that

it was stolen by means of force or violence used upon his person or by means of putting him in fear.

It was proper to deny a general motion by a defendant that a verdict of not guilty be ordered at the trial of an indictment charging armed robbery against several defendants where the evidence warranted a finding that the defendants acting in concert stole money from the custody of another, although it did not warrant a finding that there was a robbery.

An instruction to the jury at the trial of an indictment charging armed robbery of money from the person of a cashier was error in that, where there was an entire lack of evidence that the money was stolen from his custody by means of force and violence used toward the cashier or by means of putting him in fear, the charge by illustration applied the principle of constructive force and violence and also omitted the essential element of knowledge of conduct resulting in fear operating on the person robbed.

Upon appeals after verdicts of guilty by defendants charged with armed robbery of money from the person of a cashier, where there was ample evidence that the money was stolen by the defendants from the custody of the cashier but no evidence that there was a robbery, the verdicts were ordered set aside unless the Commonwealth should move for judgment and sentence as upon convictions for larceny.

INDICTMENT, found and returned on March 2, 1948.

The indictment was tried before *Goldberg,* J.

*F. Juggins & J. H. Soble,* (*A. F. Hassett* with them,) for the defendants.

*L. C. Sprague,* Assistant District Attorney, for the Commonwealth.

WILLIAMS, J.   These are appeals under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended in § 33E by St. 1939, c. 341, after sentences imposed following verdicts of guilty returned on an indictment which charged that the defendants on January 9, 1948, at Cambridge, "being armed with a dangerous weapon, did assault Estelle Sutherland with intent to rob her, and thereby did rob and steal from the person of said Estelle Sutherland money of the amount and of the value of fifty thousand dollars of the property of Harvard Coöperative Society."

There was evidence that shortly before 10:30 A.M. on January 9, 1948, a canvas bag containing $50,000 was deposited by the United States Trucking Corporation in the cashier's cage of the Harvard Coöperative Society at

its store in Harvard Square, Cambridge. The bag was placed near the door of the cage and was receipted for by Estelle Sutherland, the cashier. Shortly thereafter the defendants Novicki and Voutiritsa together with one Maverides, a codefendant at the trial but not an appellant, entered the store by its front entrance. Acting in concert, they took various positions in the store. Maverides went to the cashier's cage, opened the door of the cage, and seized the bag containing the money. At or about the same time Novicki, at the front of the store, set off a daylight distress signal (referred to at the trial as a smoke bomb) which emitted a reddish smoke. It caused a noise similar to that from the explosion of a firecracker. Dupre, an assistant manager, ran toward the front of the store and was stopped by Voutiritsa who, with his hands in his overcoat pockets, ordered Dupre to stand over against the wall. There was confusion among the customers in the store. Maverides left the cage with the bag and went toward the rear door of the store. His associates followed and all ran out of the door. Another "smoke bomb" was dropped just within the rear door and exploded as a customer, one Harper, and another man attempted to follow the defendants through the door. The door was held temporarily from the outside, and after Harper was able to open it, he started to follow the defendants, who were running down the back street. One of them pointed a revolver at him. The men ran to an automobile driven by the defendant Lewis which was waiting for them a short distance away, got in and were driven away.

At the time Maverides took the bag from the cage Miss Sutherland was listing checks on an adding machine and sitting with her back to the bag of money. She heard no noise at the front of the store and observed no smoke. Her attention was first drawn from her work by a noise behind her as though something had dropped on the floor. She testified that she turned around "just in time to see a man with the sack of money going out the door, bent over as though he had a football." When asked, "You were frightened and up-

set, and that is about all you remember of it," she replied, "Yes, sir." On cross-examination she testified that at the time Maverides took the money he had not frightened her, had not said anything to her nor pointed a gun at her. When she turned around Maverides was just about to go through the door of the cage and, knowing that he had the money, she was "upset."

At the conclusion of the evidence the defendants Novicki and Lewis each moved that "the jury be instructed to return a verdict of not guilty of the charge of armed robbery." The defendant Voutiritsa moved that the court "direct a verdict of not guilty." Exceptions were taken to the denial of these motions and their denial is the basis of an assignment of error by each defendant. Each defendant has also excepted to and has assigned as error that part of the judge's charge concerning constructive force and violence. Assignments of error relating to matters of evidence have not been argued and are treated as waived.

Robbery as defined by the common law is a crime in this Commonwealth. *Commonwealth* v. *Humphries*, 7 Mass. 242. See also *Commonwealth* v. *Clifford*, 8 Cush. 215, 216. In *Commonwealth* v. *Weiner*, 255 Mass. 506, 509, it is said, "The essence of robbery is the exertion of force, actual or constructive, against another in order to take personal property of any value whatsoever, with the intention of stealing it, from the protection which the person of that other affords. . . . It is not affected by the state of the legal title to the goods taken. That the force is exerted within a store or building rather than on the highway or out of doors is immaterial." "A thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." *Commonwealth* v. *Homer*, 235 Mass. 526, 533. When the term robbery is used in an indictment it is understood to mean "The taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to

steal." G. L. (Ter. Ed.) c. 277, § 39. The indictment in this case was drawn under G. L. (Ter. Ed.) c. 265, § 17, as appearing in St. 1943, c. 250, § 1, which provides a penalty for robbery where the offence is aggravated by the fact that the defendant is armed. There was ample evidence that the money was in the custody of Miss Sutherland and that it was stolen by the defendants acting in concert, one or more of whom was armed. An essential element of the crime charged, however, is that force and violence must be exerted on the person from whom the property is stolen or that such property be taken by means of putting such person in fear. No force and violence was used on Miss Sutherland, nor was she put in fear at the time the money was actually taken from her custody. *Thomas* v. *State,* 91 Ala. 34. *Thompson* v. *State,* 24 Ala. App. 300. *State* v. *Holmes,* 317 Mo. 9. *State* v. *Clemons,* 356 Mo. 514. *State* v. *Sala,* 63 Nev. 270. *Rice* v. *State,* 166 Tenn. 571. If the jury disbelieved her testimony, there was no other evidence warranting a finding that she had knowledge of what was taking place in the store outside the cashier's cage and in consequence thereof was put in fear. Although the crime may be considered as continuing at least until the defendants left the store with the money (see *Commonwealth* v. *Devereaux,* 256 Mass. 387; *Commonwealth* v. *Green,* 302 Mass. 547), it cannot be said that the fright which Miss Sutherland experienced when she saw Maverides leaving the cage with the money was a factor in the taking of the money from her possession. It is important to note that the indictment charges a robbery from Miss Sutherland and not a larceny from the building or the offence stated in G. L. (Ter. Ed.) c. 265, § 21. There was error in the refusal to allow the motions of Novicki and Lewis that the jury be instructed to return a verdict of not guilty of the charge of armed robbery. The motion of Voutiritsa was more inclusive in that it requested the court to "direct a verdict of not guilty." This motion was applicable to any offence properly charged in the indictment. The indictment charged

not only the offence of armed robbery but also, as necessarily included therein, the offences of robbery not being armed, assault on Miss Sutherland and larceny. *Commonwealth* v. *Lang*, 10 Gray, 11, 14. *Commonwealth* v. *Creadon*, 162 Mass. 466. The judge could not have directed a verdict of not guilty on the indictment so far as it charged larceny.

We therefore proceed to consider the exception of Voutiritsa to a portion of the judge's charge to the jury and his assignment of error based thereon. This part of the charge was as follows: "the force and violence need not be right against the person against whom it is directed. The force and violence may be somewhat further away. By way of illustration, persons may enter a bank and hold up all the customers there with guns, tell them all to stay back or else, and then proceed to the teller's cage and say, 'Hand over that money,' or just reach into the cage and take the money without saying a word to the teller, without the man who is taking the money holding a gun against the teller or threatening him in any way; here is this going on in the bank, with the other robbers holding guns against other persons, the jury would be warranted, on that hypothetical case, in finding that force and violence was used against the cashier into whose cage the robber, without any gun and without any threat, put his hand and took the money. It would be a question of fact for the jury to determine whether force and violence was used against that cashier or not and that is what is meant, in large measure by constructive force or violence, which may be constructive rather than actual, because in the hypothetical case I gave, you will observe that no threat was actually made against the cashier from whom the money was taken, and no gun was used against him, but the force and violence was all around him."

The judge was correct in stating that the force and violence "need not be right against the person against whom it is directed," and his illustration would be apposite if it assumed knowledge by the teller of the acts of violence committed on others and that he was thereby put in fear. But constructive force and violence is that which puts the

victim in fear as a result of which the actual unlawful taking of property is effected. *Commonwealth* v. *Humphries*, 7 Mass. 242. As stated in the authoritative case of *Commonwealth* v. *Snelling*, 4 Binn. 379, 383 (1812), "Actual force is applied to the body, constructive is by threatening words or gestures, and operates on the mind." The illustration of the judge omitted the essential elements of knowledge and resulting fear. In our opinion it was, therefore, misleading to the jury and constitutes error.

The verdicts, although erroneous as matter of law in relation to the charge of armed robbery, stand as verdicts of guilty of the crime of larceny, which crime, as above stated, was well charged in the indictment. *Commonwealth* v. *Kennedy*, 131 Mass. 584. *Commonwealth* v. *Crowley*, 167 Mass. 434, 442. *Commonwealth* v. *Clifford*, 254 Mass. 390. "So far as the verdict rendered is legally and properly rendered, it may avail for the purposes of judgment and sentence." *Commonwealth* v. *Lawless*, 103 Mass. 425, 434. *Commonwealth* v. *Eastman*, 2 Gray, 76. *Commonwealth* v. *Clifford*, 254 Mass. 390, 393. See G. L. (Ter. Ed.) c. 278, § 12. Where there is error in sentence but a correct conviction, on writ of error the judgment may be corrected by this court or the case remanded to the Superior Court. G. L. (Ter. Ed.) c. 250, § 12. *Gabis, petitioner*, 240 Mass. 465, 466. *Commonwealth* v. *Murphy*, 174 Mass. 369.

The judgments are reversed. The verdicts are set aside unless the attorney for the Commonwealth shall move for judgment and sentence as upon convictions for larceny of property exceeding $100 in value. See G. L. (Ter. Ed.) c. 266, § 30, as appearing in St. 1945, c. 282, § 2. *Commonwealth* v. *Lawless*, 103 Mass. 425, 435.

*So ordered.*