**UNITED STATES of America,**
**Appellee,**

v.

**Terry Lee JENSEN and Paul Francis**
**Merck, Appellants.**

**Nos. 71–1424, 71–1517.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1972.

Decided May 12, 1972.

Robert Levy, Minneapolis, Minn., and Ralph E. Koenig, St. Paul, Minn., for appellants.

Robert G. Renner, U. S. Atty. and J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before Mr. Justice CLARK,* and VOGEL and LAY, Circuit Judges.

CLARK, Associate Justice.

This is another prosecution for conspiracy to rob a federally secured state bank.[1] No robbery was consummated since the three defendants were seen by police and arrested as they sat in the front seat of a stolen Ford car parked on the bank's parking lot wearing stocking (ski) caps and having three loaded pistols, one hidden on the person of the driver of the car, a second on the seat and a third on the floor under the seat. Obviously, they could have been indicted for at least two state laws, i. e. car theft and carrying loaded pistols. However,

---

* The Honorable Tom C. Clark, Associate Justice of the United States Supreme Court, Retired, sitting by special designation.

1. 18 U.S.C. § 2113(a) : "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or posession of, any bank, credit union, or any savings and loan association ; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan asociation, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

these state offenses [2] were boosted into a federal conspiracy prosecution based entirely on circumstantial evidence, which to us appears very thin. There was no evidence of a concerted plan to rob the bank; such a plan had to be inferred from the circumstances above related, plus some peripheral proof that in no way was connected to the defendants. We believe this to be a misuse of the federal conspiracy statute that opens up avenues of prejudice to an innocent defendant and is very harmful to law enforcement as well.

*The Facts:*

As I have said, the proof is very thin. On February 8, 1971, at about 2 p. m. the appellants and a co-defendant De-Marrias, who did not appeal his conviction, were observed sitting in the front seat of a red 1969 Ford parked in the employee section of the Phalen Park State Bank in St. Paul. The local police headquarters were notified. Upon arrival, one of the local police authorities noticed that the red 1969 Ford in which the three men were still sitting had the same license number as a like model Ford that had been reported stolen two hours before. The local officers arrested the three men and ordered them from the car. A search revealed that appellant Jensen, who was behind the steering wheel, had a loaded pistol in the pocket of his jacket; another loaded pistol was found on the front seat of the car at a spot between where appellant Merck and DeMarrias were sitting and a third loaded gun was found pushed beneath the seat of the car. Two shopping bags marked with the Red Owl stores' identification were found on the middle of the floor of the front seat section of the car. Three ski caps were recovered at the time of the arrest, two in the car and one on the ground nearby.

In addition, it was shown that a black Cadillac was stolen in Minneapolis on the same day about 10 A.M. and was parked "sometime after twelve" on Birmingham Avenue in St. Paul about three blocks north of the bank. The red 1969 Ford in which the three men were arrested was stolen about 12:30 P.M. the same day in St. Paul. A witness testified that the man who parked the Cadillac on Birmingham Avenue was picked up by two men in a red 1969 Ford and the three then drove in a southerly direction (toward the bank). The Cadillac remained parked at the Birmingham Avenue location throughout the next day.

Additionally, it was shown that a man entered the Red Owl store in the vicinity of the bank about 1 p. m. on the same day and secured two Red Owl shopping bags from the grocery clerk-carry out boy.

*The Paucity of the Evidence:*

The only evidence of any conspiracy to rob the state bank was the fact that the three men were sitting together in the stolen Ford car parked in the state bank's parking lot wearing ski caps [3] on their heads and with the three loaded pistols and the two grocery bags. The peripheral evidence—in no way connected to the defendants—proved that one man parked a Cadillac within three blocks of the bank and, after parking, got into a red 1969 Ford and drove toward the bank. There was no evidence that appellants ever met before; that they stole either the red 1969 Ford or the black Cadillac; that they drove the Ford to the parking lot or parked the black Cadillac three blocks from the bank; that they had ever gone into the bank in preparation for a robbery or that they obtained the Red Owl bags. All of this the prosecutor asked the jury to infer, which it did, and found all three men guilty.

Granted, however, that the totality of these circumstances was certainly suspicious, they fail to prove the facts necessary to support the charge. Indeed, the proof wholly fails to connect appellants

---

2. Minn.Stat.Ann. § 609.66; Minn.Stat. Ann. § 609.52, 609.53.

3. The testimony shows the temperature on the day in question was 20° below zero.

with the "conspiracy's" key overt acts i. e. the driving of the Ford to the parking lot, the theft and parking of the black Cadillac, the obtaining of "ski masks" to be used on entry to the bank, and the procurement of the Red Owl shopping bags. Despite these circumstances, the courts have always held that "suspicion, however strong, is not proof and will not serve in lieu of proof." Causey v. United States, 352 F.2d 203, 207 (5 Cir. 1965). The circumstances are reminiscent of another conspiracy case in this court wherein the prosecutor sought to entwine a defendant in a conspiracy to rob another bank. There the evidence was much stronger, showing that the defendant was in the same house where the robbery was planned, was seen handling a gun used in the robbery and loaned his shirt to another defendant who was wearing only an undershirt at the time but after borrowing the shirt, actually took part in the robbery. See Kelton v. United States, 446 F.2d 669 (8 Cir. 1971). This court found "a total lack of evidence to show that the defendant engaged in some affirmative conduct in furtherance of the crime." *Id.* at 671. It concluded that "where the government's evidence is equally strong to infer innocence of *the crime charged* as it is to infer guilt, the verdict must be one of not guilty and the court has a duty to direct an acquittal." *Id.* [Emphasis supplied]. See also United States v. Jones, 418 F.2d 818 (8 Cir. 1969) and Lerma v. United States, 387 F.2d 187, 188 (8 Cir. 1968), cert. denied 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed. 2d 421 (1968), Sykes v. United States, 312 F.2d 232 (8 Cir. 1963), cert. denied 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 698 (1963). Here the appellants may as well have planned no crime at all or may have planned to rob an armored car as it drove onto the parking lot with a shipment of money for the bank, or to drive two blocks to a large shopping center and rob one of the establishments there, in which events, state offenses only would have been committed.

We conclude that there was too much room for doubt here, too little proof of the crime charged. The judgment is reversed and the cause remanded for appropriate action in keeping with this opinion.

It is so ordered.