COMMONWEALTH vs. LANNY A. DELLINGER & another.[1]

Essex.  March 3, 1981. — June 25, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Conspiracy. Robbery. Possession of Burglarious Implements. Search and Seizure,* Automobile, Probable cause. *Probable Cause. Practice, Criminal,* Required finding.

Although police officers were justified in stopping an automobile which had apparently been following a delivery van carrying a large shipment of silver, once the officers had checked the driver's license and registration and the identities of the other occupants of the automobile, and had ascertained that they were not fugitives, there was no probable cause for their further detention of the occupants or their thorough search of the automobile. [781-783]

Although the evidence at a criminal trial, including the defendants' possession of burglarious implements and a mask, was sufficient to warrant a finding of guilty of conspiracy to commit robbery, in the absence of evidence as to those items which had been seized in an illegal search, the evidence was insufficient to prove either a conspiracy to rob or a conspiracy to steal. [783-785]

INDICTMENTS found and returned in the Superior Court Department on February 20, 1979.

Pretrial motions to suppress evidence were heard by *Irwin,* J., and the cases were tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Henry A. Follen, Jr.,* for the defendants.

*Dyanne Klein Polatin,* Assistant District Attorney, for the Commonwealth.

*Andrew Good* for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

---

[1] James A. Lathan. A third defendant, Antonio Nicoletti, Jr., was convicted of the same charges, but his appeals were withdrawn following his death on May 14, 1980.

BRAUCHER, J. The defendants were convicted by a jury of conspiracy to commit robbery (G. L. c. 274, § 7), and possession of burglarious implements (G. L. c. 266, § 49). On their appeals the Appeals Court reversed the judgments, ordered judgments for the defendants on the burglarious implements indictments, and ordered resentencing on the conspiracy indictments for conspiracy to commit larceny of property of a value in excess of $100. 10 Mass. App. Ct. 549 (1980). We granted the applications of all parties for further appellate review. We reverse the convictions and order the entry of judgments of not guilty on all indictments, because the defendants' motions to suppress evidence should have been granted.

1. *The search.* We summarize the judge's findings made after a hearing on the pretrial motions to suppress. The driver of a United Parcel Service (UPS) delivery van received a large shipment of silver at Towle Silversmiths in Newburyport on the afternoon of January 17, 1979, and proceeded in a severe snowstorm to his next stop at Gould Corporation, also in Newburyport. He noticed that he was followed into the Gould lot by a brown automobile with three occupants, and that the automobile followed him after he left the Gould lot. He drove into a garage in Newbury and called the State police. Meanwhile, the brown automobile entered the driveway of a Howard Johnson's restaurant opposite the garage. A little after 5 P.M. Trooper Guilmette arrived at the garage. The UPS driver told the trooper what had happened and identified the brown automobile, parked in the Howard Johnson's parking lot. The trooper told the driver to drive directly to his UPS plant, and waited in his cruiser to observe the Howard Johnson's driveway entrance. Within three minutes the brown automobile emerged, following the route of the UPS truck, and the trooper stopped the automobile.

The trooper requested and received a valid Rhode Island license and registration from the driver, the defendant Dellinger, a valid license from the defendant Lathan, and the name of the third occupant. The driver said they had been

looking at boats in Portsmouth or Portland, Maine. The trooper instructed the occupants to remain in the automobile, returned to his cruiser parked twenty feet behind the automobile and learned by radio that there were no outstanding warrants for the occupants of the automobile but that all three had criminal records in Rhode Island relating to firearms and crimes of violence. Two additional cruisers and three officers of the Newbury and Georgetown police arrived on the scene. The three occupants of the automobile were placed in the rear of the Newbury cruiser, the doors of which could not be opened from the inside. "At this time the defendants were not yet under arrest, but were detained for the purpose of determining if they were in possession of any dangerous weapons. They were placed in the Newbury cruiser because it was, due to the inclement weather, a more practical means of detention."

The brown automobile was searched. On and under the seats were a black ski mask, two pairs of brown work gloves, a pair of binoculars, and a screw driver. In the unlocked glove compartment was another ski-type or stocking cap, a Phillips screw driver in a knife sheath, two other screw drivers, a pair of wire cutters, a chrome-plated spotlight, and a pair of black leather gloves. The trooper obtained the keys to the trunk from the defendant Dellinger and searched the truck without his consent or that of the other occupants. In the trunk were a dent puller with an extra handle, a large hammer, a pair of water pump pliers, two screw drivers, a heavy plastic duct, a plastic Halloween-type mask, and two pieces of brass plating. The hood of the automobile was also opened and the engine compartment inspected. After the search, about 6:45 P.M., the defendants were arrested.

2. *Suppression.* The judge made no findings with respect to probable cause. He ruled that the burden was on the Commonwealth under *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974), to establish the reasonableness of the warrantless search, and considered the case as a "stop and frisk" case under *Terry* v. *Ohio,* 392 U.S. 1, 27 (1968), *Commonwealth* v. *Almeida,* 373 Mass. 266, 270-273 (1977),

and *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). He found that the trooper had reason to suspect that the defendants were about to commit a crime, that they presented a threat to his safety, and that the interior of the automobile was an area from which they might gain possession of a weapon. Accordingly, he denied the motions to suppress as to the items seized from the interior of the automobile, but suppressed the evidence seized from the trunk.

The Appeals Court held that the trooper had probable cause to believe that the defendants intended to rob or steal the UPS truck and that the automobile contained firearms, and that the search of the automobile was therefore lawful. We accept the judge's ruling that the trooper was justified in stopping the automobile but we do not believe that the story of the UPS driver, coupled with the subsequent move of the defendants' automobile, amounted to probable cause. The Appeals Court drew added support from the defendants' "inferably untruthful account of their activities," and from their criminal records. The question is a close one, but we think the speculative inferences required, going beyond those drawn by the officers or the trial judge, fall short of justification for arrest or thorough search.

Before the search of the automobile the trooper had checked the license and registration of the driver and the identities of the other occupants of the automobile and had ascertained that they were not fugitives. The supposed victim of the suspected robbery was presumably far enough ahead so he was out of danger. In the absence of probable cause, there was no basis for further detention or search and no need for further protective measures. Four police officers in three cruisers in the late afternoon did not face the uncertain perils of a high crime district late at night as in the *Almeida* case, 373 Mass. at 271-272. See *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 176 n.1 (1980). Thus the evidence found in the car should have been suppressed. *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978). *Commonwealth* v. *McCleery*, 345 Mass. 151, 153 (1962).

3. *Directed verdicts.* The Appeals court held that in the absence of weapons the evidence was insufficient to warrant

a finding that the defendants intended to rob rather than merely to steal. But the defendants could have been convicted of the lesser included crime of conspiracy to steal, the court said, and there was no error in denying their motions for directed verdicts on the conspiracy charges. The defendants were to be resentenced for conspiracy to commit larceny of property of a value in excess of $100. Motions for directed verdicts on the burglarious implements charges should have been allowed; the evidence did not show beyond a reasonable doubt that the screw drivers, gloves, and wirecutters, "not by themselves particularly unusual or incriminating," were intended for use in a probable hijacking.

We do not adopt these holdings of the Appeals Court, since in view of our holding on the motions to suppress they do not affect the outcome. There is authority in other jurisdictions for applying the concept of lesser included crimes to charges of conspiracy, and we do not decide whether such application is proper. *People* v. *Horn*, 12 Cal. 3d 290 (1974) (conspiracy to commit voluntary manslaughter included in conspiracy to murder). *Bohonowsky* v. *State*, 336 So. 2d 478 (Fla. Dist. Ct. App. 1976) (conspiracy to commit petit larceny included in conspiracy to commit grand larceny). See Model Penal Code §§ 1.07 (4), 5.05 (2) (1962). But cf. *Woods* v. *State*,      Ind.      (1980) (413 N.E.2d 572 [Ind. 1980]) (no consideration of lesser offense included in conspiracy to commit battery with a deadly weapon); *Regina* v. *Barnard* (C.A. 1979) reported in [1980] Crim. L. Rev. 235 (English court rejected inclusion of conspiracy to steal in conspiracy to rob). There is a serious question whether larceny of property of a value in excess of $100 is included in robbery, which requires no minimum value, although our decision in *Commonwealth* v. *Novicki*, 324 Mass. 461, 467 (1949), seems to support such inclusion.[2] Cf. *Commonwealth* v. *Johnson*, 379 Mass. 177, 181-182

---

[2] In the *Novicki* case, unlike the present case, the indictment alleged the value of the stolen property. See G. L. c. 277, § 24. The crime of grand larceny might, of course, be so closely related to that of robbery that we would not permit multiple punishments. *Commonwealth* v. *Jones*, 382 Mass. 387, 392-395 (1981), and cases cited.

(1979) (larceny included in robbery); *Commonwealth* v. *Hogg*, 365 Mass. 290, 295 (1974) (same). The concept of a lesser included conspiracy seems not to have appeared in our law reports, and neither counsel nor the judge mentioned the possibility of a lesser charge. In this situation we do not think an appellate court should order the defendants to be sentenced for a crime never considered in the trial court.

Apart from these considerations, however, we do not agree with the Appeals Court's premise that the evidence of conspiracy to rob was insufficient. The evidence at trial did not add materially to the evidence on the motion to suppress. The sufficiency of the evidence presents a close question. Cf. *United States* v. *Jensen*, 462 F.2d 763 (8th Cir. 1972). If, as the Appeals Court held, a conspiracy to steal could be inferred, we think, as the Appeals Court pointed out, that the mask found in the passenger compartment "tended to suggest robbery as opposed to larceny of or from the truck while unattended." On the other hand, if the items seized as a result of the search are suppressed, as we hold they must be, we do not think the evidence is sufficient to prove either a conspiracy to rob or a conspiracy to steal. See *Commonwealth* v. *Cook*, 10 Mass. App. Ct. 668, 670-671 (1980), and cases cited. It is clear that the Commonwealth has no reasonable prospect of filling in the gap in its proof, either as to conspiracy or as to burglarious implements. The judgments of conviction are reversed, the verdicts set aside, and the cases are remanded to the Superior Court for entry of judgments of not guilty on all the indictments. *Commonwealth* v. *Taylor, ante* 272, 285 n.17 (1981), and cases cited.

*So ordered.*