COMMONWEALTH *vs.* JAMES SAIA
(and five companion cases.[1])

Middlesex.   September 17, 1984. — November 14, 1984.

Present: PERRETTA, CUTTER & DREBEN, JJ.

*Conspiracy. Robbery. Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Receiving Stolen Goods.*

On an indictment charging conspiracy to commit armed robbery a defendant was properly found guilty of the lesser included offense of conspiracy to commit unarmed robbery, where there was evidence at the trial permitting a finding of a conspiracy to rob a store, and no evidence suggesting that the conspiracy was limited in any way to robbing the store while armed. [764-765]

INDICTMENTS found and returned in the Superior Court Department on August 24, 1982, and October 22, 1982.

The cases were heard by *Nasif*, J., sitting by statutory authority, and a motion for a new trial was heard by him.

The case was submitted on briefs.

*John C. McBride* for the defendants.

*Scott Harshbarger*, District Attorney, *& Karen J. Kepler*, Assistant District Attorney, for the Commonwealth.

CUTTER, J. These appeals grow out of convictions, in a trial without jury, of Charles Saia (Charles) and James Saia (James) before a Juvenile Court judge sitting by statutory authority in the Superior Court. Charles received concurrent sentences to Massachusetts Correctional Institution, Walpole, for conspiracy to commit unarmed robbery, assault with intent to murder, assault and battery by means of a dangerous weapon (i.e., an automobile), and receiving stolen goods. James received concurrent sentences for conspiracy to commit unarmed robbery

---

[1] One of the companion cases is against James Saia and four are against Charles Saia.

and for receiving stolen goods. Appeals have been taken from their convictions and, by Charles, from the denial of his motions for a new trial. Upon the evidence the trial judge reasonably could have found that the events summarized below took place.

About 6:30 P.M. on May 28, 1982, Charles entered a sporting goods store in Cambridge. He asked a sales clerk how late the store would be open and was told that the store closed at 9:00 P.M. He then left.

Forty-five minutes later, James entered the store, wearing a hat and dark glasses, and walked past the sales clerk into the gun department. The clerk observed a grey Cadillac automobile parked in front of the store and recognized Charles, standing beside it, as having been at the store earlier. He notified one of the owners, who followed James through the store. Soon James left the store. The part owner saw him get into the Cadillac and depart, pursued by a police cruiser.

Officer Robert Cloran of the Cambridge police department, on patrol in a marked police cruiser, had noticed the grey Cadillac, which had been listed as stolen, parked near the sporting goods store with Charles in the driver's seat. Just as James came out of the store, the officer reported by radio that he had found the stolen Cadillac. Officer Cloran got out of his cruiser, drew his gun, and ordered the defendants to stop. Instead, they drove off rapidly, in part at least along a sidewalk. Officer Cloran pursued the Cadillac but lost sight of it after it turned a corner.

A Somerville police officer, Stephen O'Donnell, then on a motorcycle, saw the Cadillac and pursued it to Hancock Street, Somerville. He had turned on the blue lights on his motorcycle and was using its siren. The Cadillac stopped abruptly, with nothing in front of it to impede its forward movement. Charles, the driver, then backed the Cadillac into the motorcycle, overturned it, threw Officer O'Donnell to the ground, and continued to move backward for another eight to ten feet. This wedged the motorcycle under the Cadillac, so that the Cadillac's rear wheels were spinning (because not in contact with the ground) and it was prevented from moving. Each defendant abandoned the Cadillac and ran away on foot.

A witness, Edward Tivnan, chased James through a back yard until blocked by a chain link fence, which James climbed. Tivnan found a gun a few feet from where James crossed the fence and turned it over to the police. He returned to help Officer O'Donnell, who was struggling with Charles. Officer O'Donnell was assisted in subduing Charles, not only by Tivnan, but by other police officers who soon arrived.

Officer Cloran, while near the collision scene, saw James still running. He left his cruiser and chased James, found him hiding under a porch, and arrested him.

The Cadillac, the rear end of which had sustained substantial damage, had been stolen on May 17, 1982. Neither Charles nor James was authorized by its owner to drive it at any time, including the evening of May 28, 1982.

The trial judge properly denied the defendants' motions for a required finding of not guilty on each indictment, including those for conspiracy to commit armed robbery. The evidence would have permitted a rational trier of fact to find that Charles and James had made a general agreement to rob the sporting goods store and had been deterred because of the close surveillance of James (wearing, perhaps as a partial disguise, a hat and dark glasses on a late afternoon in May) when he entered the sporting goods store about three quarters of an hour after Charles's exploratory visit. The judge could have inferred, from all the circumstances already outlined, that, as part of the brothers' plan to rob the store, see *Commonwealth* v. *Corridori*, 11 Mass. App. Ct. 469, 476 (1981); *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. 590, 594-595 (1982), James had possessed the gun found on the ground near the point where James crossed the chain link fence while running away. The judge, however, did not draw this inference.

We perceive no reason why a defendant may not be convicted of conspiracy to commit a lesser included offense, where the evidence permits an inference that the conspiracy is sufficient to encompass not only the offense charged as the object of the conspiracy, but also a lesser offense included within that object. Robbery unarmed, of course, is a lesser offense included within the crime of robbery while armed. See *Commonwealth* v. *Novicki*, 324 Mass. 461, 465-466 (1949).

The issue here presented was left open in *Commonwealth v. Dellinger*, 383 Mass. 780, 783-785 (1981), a case which this court (10 Mass. App. Ct. 549, 555-562 [1980]) had remanded for resentencing. There the trial judge had sentenced for conspiracy (G. L. c. 274, § 7) to rob (G. L. c. 265, §§ 17, 19) but the evidence (see 10 Mass. App. Ct. at 556-557) would not support more than guilt of conspiracy to commit grand larceny. G. L. c. 266, § 30. The Supreme Judicial Court noted (383 Mass. at 785) that "[t]he concept of a lesser included conspiracy seems not to have appeared in our law reports" but reversed the Superior Court judgments because (at 785) essential evidence relied on in the trial court should have been suppressed and the remaining evidence was insufficient to prove either conspiracy to rob or conspiracy to steal.

The trial judge, sitting jury-waived as fact finder, after hearing evidence that would have permitted him to infer that the conspiracy was to commit armed robbery, did not do so. The evidence, however, permitted a finding that there was a conspiracy to rob the store and no evidence suggested that the conspiracy was limited in any way to robbing the store while armed. Thus, the lesser included conspiracy was fully considered in the trial court. Compare the *Dellinger* case, 383 Mass. at 785. Compare also *Commonwealth* v. *Washington*, 15 Mass. App. Ct. 378, 384 n.3 (1982). As to the concept of lesser included conspiracies, the pertinent authorities have already been collected in the *Dellinger* case, 383 Mass. at 784. See especially *People* v. *Horn*, 12 Cal. 3d 290, 295 (1974); *Bohonowsky* v. *State*, 336 So. 2d 478 (Fla. Dist. Ct. App. 1976); Model Penal Code §§ 1.07(4), 5.05(2), (Proposed Official Draft, 1962), and comment to § 5.03, at 96-144 (Tent. Draft No. 10, 1960). See also *People* v. *Alexander*, 140 Cal. App. 3d 647, 664 (1983); *Commonwealth* v. *Shannon*, 244 Pa. Super. 322, 324-326 (1976); Nolan, Criminal Law, §§ 449-450 (1976 & Supp. 1984); Perkins, Criminal Law, c. 6, § 5, at 614-619 (2d ed. 1969). Compare *Woods* v. *State*, 413 N.E.2d 572 [Ind. 1980]; *Regina* v. *Barnard* (C.A. 1979), reported in [1980] Crim.L.Rev. 235, and commentary at 236.

The question just treated is the only question requiring sub-
stantial discussion. Other issues argued are dealt with in the
appendix.

*Judgments affirmed.*

*Order denying Charles Saia*
*a new trial affirmed.*

APPENDIX.

1. There was ample evidence to support the judge's denial of Charles's
motion for required findings of not guilty on the charges of assault and
battery on Officer O'Donnell by means of a dangerous weapon, an au-
tomobile, and assault on that officer with intent to murder him. The evidence
showed that Charles was driving the automobile. The judge reasonably
could infer that Charles knew he was being followed by a police motorcycle
with its siren sounding and blue lights flashing. The sudden stopping of
the Cadillac without the presence of any obstacle to its forward movement,
the rapid and forceful backing of the vehicle with sufficient speed to knock
down the pursuing motor vehicle and to wedge it under the Cadillac's rear
axle and spinning rear wheels, and the flight of both Saias, all combined
to give basis for the judge to infer that Charles was acting with malice in
his highly dangerous, grossly ruthless action. See *Commonwealth* v.
*Campbell*, 375 Mass. 308, 312 (1978); *Commonwealth* v. *Forde*, 392 Mass.
453, 456 (1984, "An inference of malice arises from the intentional doing
of an act likely to cause death or grievous harm"). The Cadillac here was
used as a dangerous weapon. See *Commonwealth* v. *Appleby*, 380 Mass.
296, 304 (1980). The judge, sitting without a jury, may be taken to have
considered (on the charge of assault with intent to murder) whether he
should have found Charles guilty only on some lesser included offense. We
assume that, upon request if sitting with a jury, he would have been under
obligation to give instructions on that issue in an appropriate case.

2. The judge could reasonably infer that the Saias each had knowledge
that the Cadillac was stolen. Their possession of the vehicle within only
eleven days of its theft alone permits such an inference. *Commonwealth* v.
*Burns*, 388 Mass. 178, 183-184 (1983). See *Commonwealth* v. *Sandler*,
368 Mass. 729, 743-744 (1975); *Commonwealth* v. *Smith*, 3 Mass. App.
Ct. 144, 146 (1975).