514        61 Mass. App. Ct. 514 (2004)

Commonwealth v. Knapp.

COMMONWEALTH *vs.* RAYMOND KNAPP.

No. 03-P-1073.

Hampden. March 8, 2004. - July 16, 2004.

Present: GREENBERG, BROWN, & SMITH, JJ.

*Robbery.*

The evidence at the trial of indictments charging the defendant with armed robbery while masked was sufficient to establish the larceny element of the offense, where the transfer of control of the money in question was complete when the clerk of the store that the defendant was robbing opened the cash register's drawer and resumed her position on the floor, whereupon the defendant put a sock-covered hand on the money; that the defendant was foiled in his attempt to put the money in his pocket was not a function of his lack of control over it, but rather a lack of dexterity caused by the sock on his hand. [516-517]

INDICTMENTS found and returned in the Superior Court Department on December 11, 2001.

The cases were heard by *Peter A. Velis,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

BROWN, J. After a jury-waived trial in the Superior Court, the defendant was found guilty on two indictments charging armed robbery while masked. On appeal the defendant makes the sole argument that the evidence was insufficient to show that he "took and carried away" the money.

Viewing the evidence in the light most favorable to the Commonwealth, the judge could have found the following facts. On October 20, 2001, several detectives from the West Springfield police department had set up undercover surveillance in the area of Union Street and the Victory Market. At about 10:00 P.M.

Sergeant Daniel O'Brien and Officer John McCormick spotted the defendant walking by the market. The defendant drew O'Brien's attention because he slowed as he neared the building, looked inside it, and then hurried to the parking lot next door. He repeated this behavior several times.

When customer traffic into the store thinned, O'Brien saw the defendant, now with his sweatshirt hood drawn tightly around his face and a light-colored object in one hand, run into the store. O'Brien radioed for back-up units and shortly thereafter got out of his van and approached the store.[1]

Inside, there were two store clerks, Galina Titar and Yekaterina Alekseyeva. Titar testified that she saw a man enter the store wearing a Halloween mask, not a particularly unusual event given that Halloween was only eleven days away. As he approached her, however, she saw that he had a knife in his hand. He pushed her to the ground and continued toward the cash register. He ordered the cashier, Alekseyeva, to get on the floor, and upon seeing the knife, she complied. The defendant was unable to get the register open and ordered Alekseyeva to open it. She got up immediately and pushed the "no sale" button. The drawer opened and the defendant ordered her to get back on the floor, which she did. The defendant tried to take the money out of the drawer, but because he had a sock on his hand, he had difficulty manipulating the paper currency. The money fell to the floor.

At about this moment, Sergeant O'Brien came through the side door and saw two women on the floor and the defendant near the register. He ordered the defendant to drop the knife, forced him to the floor, and handcuffed him. Within about fifteen seconds, other officers arrived at the scene to assist O'Brien. Sergeant O'Brien observed money on the floor near

[1] O'Brien testified that it took at least twenty seconds to get out his vehicle because, as he testified, "I have a van, and when I set up to do the surveillance, I had opened up a baby carriage and different items to break up my outline in the van. Unfortunately I had put myself into the outer corner of [the van], and put that stuff into [the] aisle, so when I tried to get out, I got tangled up in the carriage and the seat belt, and it was — my foot was stuck in the carriage, and I actually had to kind of launch myself out of the side door, and I was hung up by the seat belt. . . . It took me longer than I wanted to get out of the van."

the register, the knife the defendant had dropped, and a sock on his right hand.

The defendant called no witnesses and relied at trial on the same argument he makes on appeal.

*Sufficiency of the evidence.* The defendant argues that the larceny element of robbery, the taking and carrying away of the property of another, see *Commonwealth* v. *Novicki*, 324 Mass. 461, 464-465 (1949), could not be established because the evidence only showed that the defendant had attempted, but not succeeded in gaining control over the money.[2]

The phrase "taking and carrying away" suggests two distinct elements. Decisional law, however, has long merged the two concepts and has held that where it can be established that the defendant had "perfect control" of the property for at least "an instant," an "instantaneous" taking and carrying away is established. *Commonwealth* v. *Luckis*, 99 Mass. 431, 433 (1868). Put differently, the "exertion of control over the victim's property was itself sufficient to supply the larceny element of the robbery." *Commonwealth* v. *Manago*, 26 Mass. App. Ct. 262, 269 (1988). See *Commonwealth* v. *Stephens*, 14 Mass. App. Ct. 994 (1982). See also *Commonwealth* v. *Vickers*, 60 Mass. App. Ct. 24, 27-28 (2003).

Here, when the clerk, at knife point, caused the closed drawer in the register containing the cash to open and then resumed her position on the floor, whereupon the defendant put his sock-covered hand on the money, the transfer of control of the money from the clerk to the defendant was complete. It was not necessary for the defendant to take physical possession of the currency to complete the transfer of control and hence the robbery. See *Commonwealth* v. *Stephens*, 14 Mass. App. Ct. at 994-995 (when pharmacist, at gun point, took pills from their resting place and put them into a pillow case, he transferred control over them to the defendant). See also *Commonwealth* v. *Bradley*,

---

[2]The argument impliedly concedes, correctly, that all the remaining elements of armed robbery were properly established. See generally *Commonwealth* v. *Novicki*, 324 Mass. 461, 464-465 (1949); *Commonwealth* v. *Goldstein*, 54 Mass. App. Ct. 863, 867 (2002) (robbery includes all of the elements of larceny and in addition requires that force and violence be used against the victim or that the victim be put in fear).

2 Mass. App. Ct. 804, 805 (1974) (where victim felt the defendant "fishing through" him as the defendant attacked him and the victim later found his wallet on the ground where he had been struck, the evidence was sufficient to show a momentary transfer of control over the victim's wallet to the defendant). That the defendant was foiled in his attempt to pocket the booty from the robbery was not a function of his lack of control over it, but rather of a lack of dexterity caused by the sock on his hand.

The defendant's argument — that he only had access to the money, not control of it — fails because it mistakes physical possession for control. *Commonwealth* v. *Stephens*, 14 Mass. App. Ct. at 995 (it was not necessary for the defendant to take physical possession of the property to complete the transfer of control).

*Judgments affirmed.*